[No. 46576–2.   En Banc.   December 31, 1980.]

CHARLES E. HUPE, *Appellant*, v. GEORGE E.
COATES, *Respondent*.

*Anton J. Miller*, for appellant.

*Slade Gorton, Attorney General*, and *Timothy J. Low-enberg, Special Assistant*, for respondent.

HICKS, J.—This quo warranto proceeding was brought in the Superior Court for Pierce County to try title to the office of assistant adjutant general for the Washington Army National Guard (WANG). The trial court held the defendant/respondent was entitled to the office. Plaintiff/appellant appealed directly to this court. We affirm the trial court.

In February 1978, the Governor detailed appellant Hupe to the office of assistant adjutant general for the WANG. Fourteen months later Hupe was relieved of his duties by the adjutant general. Shortly thereafter, the adjutant gen-

eral, with the concurrence of the Governor, detailed respondent Coates to the position.

In bringing this action, Hupe asserts (1) once detailed and "federally recognized" as assistant adjutant general for the WANG, he was federally entitled to serve in that position for 5 years, and (2) he could be removed from his office of assistant adjutant general only upon his resignation, disability, or for cause determined by a legally convened court–martial. RCW 38.12.090. While there is some assertion on the one hand that Hupe was relieved of his duties because of unsatisfactory performance and on the other hand that his relief was motivated by arbitrary, capricious and corrupt reasons, the record before us establishes neither contention.

The issue, as we see it, is solely whether an assistant adjutant general serves at the pleasure of the Governor, as does the adjutant general. We hold that he does.

We start our analysis by recognizing that the Governor is vested with the supreme executive power of the state and is commander–in–chief of the state military. Const. art. 3, §§ 2, 8. As commander–in–chief and through the adjutant general, the Governor administers all the affairs of the state militia not in the service of the United States. RCW 38.08-.020.

Under the National Guard Regulations (NGR), appointment and tenure of the state adjutant general and his assistants are governed by state law. NGR 600–100, § 10–1. By statute, the adjutant general is chief of staff to the Governor and removable by the Governor at will. RCW 38.12.010.

The adjutant general's department is divided into two divisions—the Army National Guard and the Air National Guard. Each division is headed by an assistant adjutant general. RCW 38.12.015. Whenever a vacancy in either of those offices occurs, the adjutant general, with the concurrence of the Governor, may appoint an officer to fill the detail. RCW 38.12.030. The officer so appointed may hold

the rank of a general officer during the continuance of his service as assistant adjutant general.

With the foregoing as background, we examine appellant's claim to the office of assistant adjutant general which he bases upon RCW 38.12.090 and NGR 600–100, § 10–5(i). The former provides:

> Staff officers of the organized militia of Washington hereafter detailed shall have had previous military experience and shall hold their positions until they shall have reached the age of sixty–four years, unless retired prior to that time by reason of resignation, disability, or for cause to be determined by a court martial legally convened for that purpose, and vacancies among said officers shall be filled by detail from the qualified officers of the organized militia of this state.

The latter provides:

> 10–5. Recommendation procedure and documentation. Upon announcement by the Chief, National Guard Bureau that a General Officer Federal Recognition Board is to be convened by the Secretary of the Army, the following documents will be submitted for each officer to be considered by the board: . . .
>
> . . .
>
> (i) A certificate signed by the State Adjutant General to the effect that applicant, if extended Federal recognition in the higher grade, will be able, barring unforeseen circumstances, to serve in the higher grade in the Army National Guard of the State for at least 3 or 5 years, as appropriate, unless sooner removed for cause.

Considering his authority in inverse order, it seems to us that appellant's reliance upon NGR 600–100, § 10–5(i) is misplaced. As noted earlier, tenure of the adjutant general and his assistants by NGR 600–100, § 10–1 is placed in the hands of the State. Section 10–5 of that regulation contains the procedure to be followed to obtain federal recognition of a state officer in a higher grade and designates the documentation necessary to that end. Section 10–5(i) prescribes qualification criteria for federal recognition in the higher grade, not a tenure requirement for any particular

position. It is to be noted that NGR 600–100, ch. 10 concerns the category of general officers, not just adjutant generals and assistant adjutants general. Our examination of the various sections of chapter 10 discloses nothing which establishes tenure requirements. While the federal board undoubtedly expects a federally recognized state officer to be *able* to serve 3 to 5 years in the recognized grade, it should not necessarily expect such length of actual service from a federally recognized assistant adjutant general whose tenure is state controlled.

As far as we can determine, RCW 38.12.090 first appeared as Laws of 1917, ch. 107, § 16, p. 363. It stated:

Staff officer[s] of the National Guard of Washington, including officers of the Pay, Inspection, Subsistence and Medical Departments, hereafter appointed shall have had previous military experience and shall hold their positions until they shall have reached the age of sixty-four years, unless retired prior to that time by reason of resignation, disability, or for cause to be determined by a court–martial legally convened for that purpose, and vacancies among said officers shall be filled by appointment from the officers of the militia of this state. This section shall cease to be effective whenever its provisions shall not be required by federal law as a condition to participation by the state in federal appropriations.

Reenactments of the statute have contained neither examples of such staff officers nor the last sentence which made the efficacy of the section dependent upon the requirements of federal law. Whatever may be the present purpose of RCW 38.12.090, we are convinced it is not applicable to the adjutant general or his assistants.

The first time the adjutant general's department appears in the statutes is in Laws of 1909, ch. 134, § 26, p. 445. There the department consisted of the adjutant general, an assistant adjutant general, a chief clerk, a stenographer and a storekeeper. The adjutant general was charged with prescribing the duties of the assistant adjutant general. In the event the adjutant general became incapacitated, the

assistant adjutant general was to perform in his stead. Laws of 1909, ch. 134, § 27, p. 445, 448.

In 1961, the adjutant general's department was reorganized into two divisions as described above. Laws of 1961, ch. 210, § 2, p. 1943. The adjutant general's department contains the three key administrative personnel of the Washington National Guard. They are the adjutant general and two assistant adjutants general. While they are staff officers in one sense, they are staff officers of a unique character with many directive and oversight functions. We decline to include them in the category of staff officers exemplified in Laws of 1917, ch. 107, § 16, p. 363, the forerunner of RCW 38.12.090 upon which appellant relies. We are satisfied that under the existing statutes and regulations, the adjutant general and his assistants hold their particular details at the pleasure of the Governor.

In this instance, the adjutant general purported to relieve appellant of his detail. To be effective, such relief order of necessity had the concurrence of the Governor, whether or not specifically expressed therein.

We premise our decision on the ground that the Governor, as commander–in–chief, is in direct control of and responsible for the training, condition and performance of the Washington National Guard. The commander–in–chief must, at all times, have the highest confidence in the key officers through whom the state military is administered. Consequently, she may detail to the positions of adjutant general and assistant adjutants general those qualified officers in whom she has such reliance. Their tenure in office is dependent upon the Governor's continuing faith in them. Should her confidence in any officer so detailed falter, she may relieve that officer of his detail. Such power is inherent in the commander–in–chief.

In a larger sense, such authority flows from the broad and comprehensive grant of executive power to the Governor by Const. art. 3, § 2. Inherent in that broad grant of power is authority to appoint and to remove, absent statutes or regulations to the contrary.

The proposition that power to remove officers is a necessary incident to the power to appoint was established in *Myers v. United States,* 272 U.S. 52, 71 L. Ed. 160, 47 S. Ct. 21 (1926). Subsequent decisions have limited the unrestricted power of removal articulated in *Myers.* Now, only "purely" executive offices are held at the pleasure of the president. The occupants of those offices whose functions are independent of the executive may have terms that are tenured. Regulatory agencies that are quasi–legislative or quasi–judicial in nature are such offices. Stated another way, it is said that officers whose decisions cannot be altered by the executive are not subject to removal at his pleasure. Such offices and officers are not "purely" executive and may even require a certain amount of freedom from executive interference. *Wiener v. United States,* 357 U.S. 349, 2 L. Ed. 2d 1377, 78 S. Ct. 1275 (1958); *Humphrey's Executor v. United States,* 295 U.S. 602, 79 L. Ed. 1611, 55 S. Ct. 869 (1935). *See* L. Tribe, *American Constitutional Law* 184–91 (1978).

The federal and state governments are, of course, not exact parallels. This state, for example, has a number of officers classed in the executive department who are individually elected and independent of the Governor. Const. art. 3, § 3. While vacancies in such offices may be filled by appointment of the Governor, it is clear the Governor has no power to remove those officers after appointment. Otherwise, however, we are aware of no reason why the Governor's power of appointment to a nonelective office in the executive department should not carry as an incident the power of removal as in the federal system.

In any event, in the instant case we are not dealing with the power of removal in the sense of severing all relations with government. Here, we are concerned only with relieving an officer of his detail to a particular assignment, not dismissal from the guard. No issue is raised in this case regarding the status of appellant in the WANG following his relief as assistant adjutant general. The question before us is, can an assistant adjutant general for the WANG be

relieved of his detail if the Governor concurs? We hold that he can.

Affirmed.

UTTER, C.J., ROSELLINI, STAFFORD, BRACHTENBACH, HORO-WITZ, DOLLIVER, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.

Reconsideration denied February 13, 1981.