414 So.2d 1283 (1982)
Ezra CHAPMAN, Plaintiff-Appellee and Appellant,
v.
BELDEN CORPORATION, Defendant-Appellee.
No. 8686.
Court of Appeal of Louisiana, Third Circuit.
March 17, 1982.
Rehearing Denied May 10, 1982.
*1285 Charles E. Welsh, Asst. Atty. Gen., Shreveport, for defendant-appellant.
Davis & Murchison by James D. Davis, Alexandria, for plaintiff-appellee-appellant.
Gaharan & Wilson, Donald R. Wilson, Jena, for plaintiff-appellee.
Before FORET, CUTRER and DOUCET, JJ.
DOUCET, Judge.
This is a workmen's compensation case involving multiple defendants and numerous issues. The trial judge found that the plaintiff, Ezra Chapman, had suffered a compensable back injury in the course of his employment with Belden Corporation, defendant and third party plaintiff. The trial judge also found that the plaintiff, subsequent to the back injury, suffered a heart attack in the course of his employment as a member of the Louisiana National Guard, third party defendant, and was entitled to benefits as a result thereof. Judgment was granted in accordance with the trial judge's findings. From this judgment both the Louisiana National Guard and Chapman have appealed. We affirm.
Plaintiff was employed as a supervisor at the Belden Corporation's wire plant in Jena, Louisiana. On April 28, 1978, while stacking wire, he sustained a lumbosacral strain and was immediately taken to a doctor. He remained hospitalized for several days. Subsequently, he was released to return to work on May 12, 1978.
From May 12, 1978, through August 12, 1978, Chapman performed all of his duties as a supervisor at the Belden plant. In addition, Chapman also performed all of the duties required of him as a result of his employment with the Louisiana National Guard, where Chapman was an enlisted man at the rank of E-5, and performed the duties of a cook. During the period May 12, 1978, through August 12, 1978, Chapman attended three monthly Louisiana National Guard drills, and in addition attended summer camp for two weeks with the Louisiana National Guard. During this period of time he was able to perform all of his duties, at both Belden and the Louisiana National Guard satisfactorily, although he was in some pain as a result of his lumbosacral strain.
On August 12, 1978, plaintiff attended a Saturday drill at the Louisiana National Guard Armory at Jena, Louisiana where, as a cook, he supervised the cooking of the noon meal. After the meal had been prepared, the men served, and kitchen cleaned up, Chapman returned home whereupon he began to feel chest pains and a shortness of breath. Shortly thereafter, he suffered a myocardial infarction. He was hospitalized in Jena and Alexandria, Louisiana, until being transferred to St. Luke's Hospital in Houston, Texas on November 3, 1978, where he underwent a triple coronary bypass operation.
After the bypass operation was performed, and Chapman had recovered therefrom, he attempted to return to his employment at Belden, working in a less strenuous position. However, Chapman was able to work only one and one-half days, after which he began to suffer from attacks from angina pectoris and left his job at the Belden plant, never to return.
During this period, and for a substantial period of time thereafter, Belden paid accident and sickness benefits to Chapman in excess of $29,000.00, including costs of the myocardial infarction, the triple bypass operation *1286 performed in Houston, the recuperative care, stress tests, EKGs and many other medical expenses associated solely with the heart attack.
Chapman filed a workmen's compensation suit against his employer, Belden Corporation, on May 25, 1979, alleging he was totally and permanently disabled as a result of injuries received. Subsequently the defendant and plaintiff filed amended complaints on May 9 and 27, 1980, respectively, naming the State of Louisiana, through the Louisiana National Guard as a defendant, alleging that Chapman was entitled to workmen's compensation from the Guard as the result of the heart attack which occurred on August 12, 1978. Additionally, defendant Belden, as third party plaintiff, sought recovery from the Guard of all medical and compensation benefits paid to Chapman following the August 12, 1978 heart attack. After various motions were heard and trial on the merits, the trial judge found Chapman to be totally and permanently disabled. Judgment was rendered in favor of Chapman and against Belden, awarding plaintiff 100 weeks of benefits in the amount of $138.00 per week, plus all medical expenses associated with a back injury, subject to a credit for all amounts previously paid by Belden, and also subject to a credit for all sums paid to Chapman by the Social Security Administration. Judgment was also rendered in favor of Chapman, against the Louisiana National Guard, awarding plaintiff workmen's compensation benefits at the rate of $961.31 per month, pursuant to U.S.C. provisions, commencing August 12, 1978 and continuing for the duration of plaintiff's disability and further awarding plaintiff medical expenses associated with the heart attack. Furthermore, judgment was granted in favor of Belden on their third party demand against the State.

ISSUES
The issues for consideration on appeal are: 1) whether the United States is an indispensable party in an action against the National Guard; 2) whether the trial judge erred in denying the Guard's motion for Summary Judgment which was based upon LSA-R.S. 23:1211; 3) whether the trial court erred in setting the trial prior to answer; 4) whether the suits against the Guard were barred by prescription; 5) whether plaintiff established a casual connection between the employment activity with the Guard and the disability occasioned by the heart attack; 6) whether the award of benefits pursuant to 32 U.S.C. § 318 was proper; and 7) whether the award of attorney's fees was warranted.

FAILURE TO JOIN THE UNITED STATES AS PARTY DEFENDANT
The Guard excepted to the petitions of plaintiff and Belden, seeking dismissal on the grounds that aforesaid parties had failed to join the United States as an indispensable party. The exception was overruled. Resolution of this issue depends on whether plaintiff is considered an employee of the State or United States. LSA-R. S.:29:3(B)(1) defines the organized militia as consisting of the National Guard, the Louisiana State Guard and other military forces which may be authorized by law. LSA-R.S. 29:4 provides:
"The national guard is divided into two classes, the active national guard and the inactive national guard.
A. The active national guard consists of the regularly commissioned, enlisted, organized, and uniformed military forces of Louisiana who participate in apportionment of the annual appropriation provided by the Congress of the United States of America for the support of the national guard.
B. The inactive national guard consists of all persons qualified for enlistment in the active national guard and who are enlisted in the inactive national guard and the officers and enlisted men transferred thereto pursuant to federal laws and regulations."
We have found no Louisiana jurisprudence addressing the question of the status of members of the Guard. However, the vast majority of located decisions on the state and federal militia relationship hold that National Guardsmen of the several states *1287 are employees of the state except when in actual service of the United States.
In the landmark case of State v. Johnson, 186 Wis. 1, 202 N.W. 191 (Wis.1925) the Wisconsin Supreme Court held that the National Guard is part of the Army only while in service of the United States, and at other times is a state organization, and hence a member of the National Guard injured while at target practice was entitled to workmen's compensation from the state. The court therein recognized that from the time of the framing of the United States Constitution two distinct military organizations were expressly recognized: the National Army, consisting of professional soldiers in continuous service; and the Militia, a state organization primarily in the service of the state and subject to the call of the country in the event of national emergency. The Second Amendment to the Constitution expressly recognizes the Militia and their right to bear arms: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." When the National Defense Act was enacted, the need for greater unification of the National Guard with the federal army was recognized, nonetheless it still retains its essential feature as part of the Militia in times of peace. Although the name connotes a federal unit, the National Guard remains only a potential part of the federal army.
Similarly, in Baker v. State, 200 N.C. 232, 156 S.E. 919, it was held in the following language that members of the National Guard were employees within the meaning of workmen's compensation law:
"The record shows, in any event, that the plaintiff was voluntarily in the service of the state and subject to its direction and control. This is one of the tests of employment; and under the liberal interpretation given to the Compensation Law we should hesitate to hold that there can be no employment within the meaning of the act unless there happens to exist the technical relation of master and servant."
The law appears well settled that members of the National Guard of the various states are state employees except when in actual service of the United States. Williams v. United States, 10th Cir., 189 F.2d 607; Storer Broadcasting v. United States, 5th Cir., 251 F.2d 268, cert. denied 356 U.S. 951, 78 S.Ct. 916, 2 L.Ed.2d 844.
Accordingly, the United States was not an indispensable party to the action.

SUMMARY JUDGMENT
Closely related to the issue of status of the National Guardsmen is the Guard's argument that the trial judge erred in not sustaining their Motion for Summary Judgment, citing in support thereof LSA.R.S. 23:1211, which provides:
§ 1211. Special compensation benefits for injury or death of member of national guard
A. Every member of the national guard who is accidentally injured, or his dependents if he is accidentally killed, while on active duty during a state of emergency declared by the governor and for the duration of such emergency as declared by the governor, shall be compensated by the state in accordance with the workmen's compensation law, including but not limited to such medical, surgical and hospital services and medicines and such disability and death benefits as are authorized by said workmen's compensation law.
B. No compensation shall be paid by the state for injury or death occurring while in the service of the United States of America or while going to or returning from this service.
C. No compensation shall be paid unless the injury or death arose out of and in the course of the service. Before any claim is certified for payment, proof that the applicant is entitled to payment shall be made in accordance with regulations prescribed by the adjutant general. The amount payable as compensation may be commuted to a lump sum settlement by agreement of the parties. In computing the weekly benefit hereunder, either the weekly wages from the member's principal civilian employment or his weekly military wages, whichever is larger, will *1288 be used. Otherwise, the provisions of the workmen's compensation law apply.
D. Except as provided in Subsection C hereof, the provisions of this section and of no other law shall govern the compensation benefits payable to members of the national guard.
Attached to the motion was an affidavit which stated that Mr. Chapman was not on duty under a state of emergency declared by the governor. The Guard interprets this statute as limiting their liability to those situations where the governor has declared an emergency and has called the Guard into service. Plaintiff argues that the provisions of R.S. 23:1211 are intended to expand coverage under the Louisiana Workmen's Compensation Act to include situations arising during a state of emergency. Alternatively, plaintiff argues that 32 U.S.C. § 318, et seq. establishes minimum benefits, therefore, consistent with the supremacy clause, the state can provide no less.
We have discovered no jurisprudence interpreting the above statute. As we construe it, the act was intended to allocate the liability for workmen's compensation benefits between the state and federal governments, depending upon in whose service the member was acting at the time of the injury, and to expand state coverage to those situations where a state of emergency has been declared by the governor. In reaching this result we rely particularly on the last section of sub-section (c) which provides that "Otherwise, the provisions of the workmen's compensation law apply." Affording R.S. 23:1211 a liberal construction, as is proper with all remedial statutes, requires us to conclude that the trial court's action in this respect was appropriate.

TRIAL FIXING
LSA-C.C.P. Art. 1571 provides:
Art. 1571. Assignment by court rule
The district courts shall prescribe the procedure for assigning cases for trial, by rules which shall:
(1) Require adequate notice of trial to all parties; and
(2) Prescribe the order of preference in accordance with law.
These rules shall not allow the assignment of ordinary proceedings for trial except after answer filed.
Plaintiff and Belden argue that Art. 1571 is inapplicable insofar as a workmen's compensation action is not an ordinary proceeding; that trial is required by law to be expedited, that the rules of procedure are sui generis, and additionally argue that the Guard failed to contemporaneously object to the fixing of trial before answer. The Guard correctly notes that the language of the last paragraph is mandatory. Inasmuch as the trial was set before the answers of the Guard were filed, the Guard claims the judgment must be declared a nullity. Such a result was obtained in Jackson v. Hannie, 225 So.2d 385 (La.App. 3rd Cir. 1969), wherein we stated:
"In the present case, we hold that the judgment appealed is null and void because this is an ordinary proceeding which was assigned for trial before an answer was filed, in violation of the mandatory requirements of LSA-CCP Article 1571, and because this irregularity was not waived." (emphasis added)
The record discloses that plaintiff's counsel requested a trial fixing, and pursuant thereto, on April 23, 1981, trial on the merits was fixed by the trial judge for May 26, 1981. As heretofore mentioned, the third party claims against the Guard were filed by defendant and plaintiff respectively, on May 9 and 27, 1980. The record further discloses that copies of the trial fixing order were sent to all counsel of record, although the trial judge did note that someone from the Attorney General's office had called his house and spoken with his daughter alleging they (the state) had not received notice of the trial being set. Furthermore, the record discloses that the case had been continued three times, twice at the request of the Guard. In deciding to proceed with trial, the district judge noted that the plaintiff was in precarious health and further delays could prove prejudicial. The trial judge observed, "There is a risk that his testimony might not be available if we delayed too long." In view of all of the *1289 above, we find that the Guard waived any irregularity in this regard; thus the trial judge did not abuse his discretion in proceeding with trial. For the same reasons, the trial judge did not err in denying the Guard's application for a new trial.

PRESCRIPTION
Plaintiff suffered his myocardial infarction on August 12, 1978. He filed suit against his employer, Belden Corporation, on May 25, 1979. On May 9, 1980, Belden filed a third party demand against the Guard. The Guard responded by filing an Exception of Prescription based upon LSA-R.S. 23:1209, which provides:
§ 1209. Prescription
In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of partial disability this limitation shall not take effect until three years from the time of making the last payment. Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.
A hearing was held in the matter on March 17, 1981. Evidence introduced included plaintiff's pay records with the Guard which revealed that he was paid for drills on August 13, 1978 and a later drill in September, neither of which plaintiff attended. The trial court concluded that, inasmuch as plaintiff received compensation for days he did not work, the three year prescriptive rule applied. In reaching this result the trial judge relied upon Miller v. Belden Corp., 386 So.2d 974 (La.App. 3rd Cir. 1980), wherein we held that in the absence of an agreement between the parties that compensation payments were made by defendant for total disability, benefits were presumed to have been paid for partial disability, and plaintiff had three years from last payment to bring her suit notwithstanding the contrary two year prescriptive provision, as the former provision was the latest expression of legislative will and furthered the objectives of the workmen's compensation act.
Belden, asserting independent grounds for affirmation, contends that its action against the State for restitution of money paid in error to Chapman is governed by the omnibus 10-year prescriptive period of LSA-C.C. Art. 3544 applicable to personal actions not otherwise provided for. In support of their position Belden brings to our attention the case of Employers Liability Assurance Corporation v. General Accident Fire and Life Assurance Corporation, 125 So.2d 689 (La.App. 1st Cir. 1960), wherein a dispute arose as to whether the insurer at the time of the accident or the insurer at the time a disability developed was required to pay benefits and the latter party paid in order to avoid possible penalties. Thereafter, in a suit for recovery of benefits paid, defendant insurer sought to interject prescription of one year. The appellate court held that the relief sought by the insurer at the time of the employee's disability was for restitution, therefore the applicable prescriptive period was ten years.
The intent of the 1975 amendment to LSA-R.S. 23:1209, adding the three year prescriptive period, was to protect the worker from an unscrupulous employer who would lull the injured worker into a false sense of security causing him to withhold suit until after the period was expired. Where the employer has lulled the employee into a false sense of security, he will be estopped from invoking prescription. Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385 (1972); Johnson v. Morton Salt Co., 377 So.2d 549 (La.App. 3rd Cir. *1290 1979). In the present case the plaintiff absented himself from the Guard's drill camp and was hospitalized, never to return. His regular employer, Belden, began payments and provided for his medical expenses. The Guard contented itself with disregarding plaintiff's absence from the militia, making no inquiries, providing no benefits except for payments for drills in September and November of 1978 not attended, and providing insurance through August 1979. Under these circumstances, and for the reasons assigned by the trial judge, we find that the action against the Guard was not prescribed.

CAUSATION
The Guard asks us to reverse the trial judge's factual finding that the petitioner established a connection between the attack and employment activity.
Heart attacks have been held to be accidents within the purview of our workmen's compensation laws. Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969) (on rehearing); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975); Adams v. New Orleans Public Service, Inc., (La.1981), Docket No. 81-C-0784. Where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. Adams v. New Orleans Public Service, Inc., supra.
The trial judge made the following observations relative to causation:
"I find that effective approximately 7:00 a. m. on August 12, 1978 the plaintiff started to work for the Louisiana National Guard as an enlisted man, rated E-5, and that his duties on that date were those of an enlisted cook. Between 7:00 a. m. and 2:00 p. m. on August 12, 1978, plaintiff worked as a cook at the Louisiana National Guard Armory situated near the airport in LaSalle Parish, Louisiana. I find that after a full day of labor in the kitchen of the Louisiana National Guard Armory that the plaintiff went home and shortly thereafter suffered an acute myocardial infarction which required his immediate hospitalization and as a result of which he was totally and permanently disabled.
Through counsel, plaintiff contends that he has been totally and permanently disabled as a result of both accidents being the accident of April 28, 1978 and the accident of August 12, 1978. It is my view and I find that the most probable cause of his total and permanent disability is the physical aftermath of the myocardial infarction sustained on August 12, 1978. I further find that plaintiff was able to endure all of the stress, strain and exertion required of him by the Belden Corporation at his employment by them as a supervisor in their manufacturing facility after his first accident, which disabled him for only 15 days. I find that he was unable to endure the extra exertion, stress and strain imposed on him by service in the Louisiana National Guard and by preformance [sic] of his assigned duties as an enlisted cook. I find that his work place for the Louisiana National Guard was hot and his duties were strenuous and that within the meaning of the Louisiana Workman's [sic] Compensation Act, that his duties and the preformance [sic] of those duties as enlisted cook for the Louisiana National Guard were the cause in fact of the myocardial infartion [sic] suffered during the afternoon or early evening of August 12, 1978 by this plaintiff."
The trial judge was of the opinion that the plaintiff's strenuous work in the hot kitchen created a strain on the heart. The Guard elicited testimony that plaintiff was slightly obese and smoked, and sought to show that this coupled with work-related anxieties at Belden caused the heart attack. In such cases involving heart conditions benefits are due, whether or not the condition is pre-existing, when the accidental injury is caused or precipitated by the usual and customary actions, exertions, and other factors directly connected with the employment. Roussel v. Colonial Sugars Co., *1291 supra. The trial judge's factual determination as to causation is entitled to great weight and will not be disturbed absent manifest error. Roussel v. Colonial Sugars Co., supra; Canter v. Koehring, 283 So.2d 716 (La.1973). We affirm in this regard.

COMPENSATION AWARD
Plaintiff was awarded benefits from Belden. The trial court also awarded Chapman benefits at the rate of $961.31 per month to be paid by the Guard, pursuant to 32 U.S.C. § 318:
318. Compensation for disablement during training.A member of the National Guard is entitled to the hospital benefits, pay and allowances, pensions, and other compensation provided by law or regulation for a member of the Regular Army or the Regular Air Force, as the case may be, of corresponding grade andlength of service, whenever he is called or ordered to perform training under section 502, 503, 504, or 505 of this title
(1) for a period of more than 30 days, and is disabled in line of duty from disease while so employed; or
(2) for any period of time, and is disabled in line of duty from injury while so employed.
The Guard appeals this award, contending that plaintiff is entitled to benefits only as provided by Louisiana law, citing in support thereof LSA-R.S. 23:1211, supra. No party has cited any jurisprudence in support of their respective positions and our research has revealed none.
As we construe the conflicting statutes, federal law controls the computation of benefits owing to an injured guardsman. It is the opinion of this court that in participating in federal funds for the Guard, the state foregoes the right to limit workmen's compensation recovery and consents to the uniform formula for recovery set forth in 32 U.S.C. § 318. Whether the State of Louisiana has a claim for reimbursement from the United States is not before this court. Therefore, the trial judge's ruling in this respect is affirmed.

ATTORNEY'S FEES
The trial court found that the Guard "acted without probable cause" in failing to provide medical treatment and benefits to plaintiff and, accordingly, awarded $4,000.00 in attorney's fees pursuant to LSA-R.S. 23:1201.2. The Guard contends that genuine factual and legal disputes existed such as to justify their refusal to pay. We agree that attorney's fees are not warranted in this case as the Guard's actions were not "arbitrary, capricious, or without probable cause." No notice nor demand was served on the Guard prior to filing of Belden's third party demand. No information was given to the Guard that should have alerted it that plaintiff was absent, not from a non-occupational illness, but from a job-related accident. Furthermore, a valid dispute existed as to whether plaintiff's claim was barred by prescription, as well as to the applicability of LSA-R.S. 23:1211. Under these circumstances the award of attorney's fees was clearly wrong. Accordingly, we amend the judgment to strike the award of attorney's fees.

PLAINTIFF'S ASSIGNMENT OF ERRORS
Plaintiff-appellant's assignment of errors are without merit[*] He contends that the trial court erred in not finding plaintiff totally and permanently disabled as the result of the back injury, in addition to the total and permanent disability occasioned by the heart attack. The trial judge was of the view that the most probable cause of plaintiff's total and permanent disability was the physical aftermath of the myocardial infarction sustained on August 12, 1978. We will not disturb reasonable inferences of fact simply because another result might be just as reasonable, absent manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973). We find no manifest error.
Plaintiff further complains that the trial judge erred in not holding Belden liable for penalties and attorney's fees. However, the trial court's determination as to whether a refusal to pay benefits is arbitrary, capricious or without probable cause *1292 is partially a factual determination which will not be disturbed in the absence of manifest error. Lofton v. Louisiana Pacific Corp., 410 So.2d 1171 (La.App. 3rd Cir. 1982); Cullivan v. Fish Engineering and Construction Co., 354 So.2d 597 (La.App. 3rd Cir. 1977). We find no manifest error in the trial judge's finding.
For the above and foregoing reasons, the judgment of the trial court is amended to delete the award of attorney's fees and in all other respects the judgment is affirmed. Costs of this appeal are to be born equally between appellants.
AFFIRMED AS AMENDED.
NOTES
[*] Plaintiff failed to brief any of the issues presented on appeal, nonetheless rather than deeming any errors waived, we dispose of same hereinabove.