428 So.2d 396 (1983)
Ezra CHAPMAN
v.
BELDEN CORPORATION and State of Louisiana, through the Louisiana National Guard.
No. 82-C-1428.
Supreme Court of Louisiana.
February 23, 1983.
Rehearing Denied March 25, 1983.
Charles E. Welsh, Asst. Atty. Gen., for applicant.
James D. Davis, Alexandria, Donald R. Wilson, Jena, for respondents.
DIXON, Chief Justice.
Plaintiff, Ezra Chapman, sustained a back injury while working for his regular employer, Belden Corporation, and suffered a heart attack after attending a weekend drill with the Louisiana National Guard. Plaintiff brought suit against both Belden *397 and the Louisiana National Guard, seeking permanent disability benefits under the workmen's compensation act. Recovery was granted by the trial court and affirmed by the court of appeal. Chapman v. Belden Corp., 414 So.2d 1283 (La.App.1982). On the application of the State, through the National Guard, writs were granted to review the findings of the lower courts that "plaintiff, subsequent to the back injury, suffered a heart attack in the course of his employment as a member of the Louisiana National Guard." Chapman v. Belden Corp., supra at 1285.
Chapman, forty-six years old, was employed as a supervisor at Belden Corporation's wire plant in Jena, Louisiana. He had worked for Belden for over ten years in various positions. On April 26, 1978, while stacking wire at the manufacturing plant, Chapman sustained a lumbosacral strain and was immediately taken to a doctor. The injuries to his back required rest and hospitalization. On May 13, 1978, pursuant to a written release from his physician, Dr. Riaz M. Chaudhry, Chapman returned to work. All workmen's compensation benefits were paid to Chapman for this period, as well as his medical expenses.
From May 13, 1978 through August 11, 1978, Chapman worked at Belden without incident. During this same period, in addition to fulfilling his duties at the Belden plant, Chapman satisfied the requirements of participation in the Louisiana National Guard, including three weekend drills and a two week summer camp. Chapman, an enlisted man, was a cook for the Guard.
On August 12, 1978, Chapman attended a Saturday drill at the Louisiana National Guard Armory in Jena, Louisiana. He worked from 7:00 a.m. to 2:00 p.m.; his duties consisted of supervising the preparation and serving of the noon meal. He arrived home shortly after 2:00 p.m. and "just sat around and read." At approximately 7:30 p.m., Chapman suffered an acute myocardial infarction. He was first hospitalized in Jena and then later in Alexandria, Louisiana, before being transferred to St. Luke's Hospital in Houston, Texas where he underwent a triple coronary bypass operation on November 3, 1978.
Following recuperation from the open heart surgery, in January 1979, Chapman attempted to return to work at Belden in a clerical position. Notwithstanding the change in his duties, Chapman was only able to work approximately two and one-half days when he began to experience chest pains. Since that time he has been unable to work for either Belden or the Louisiana National Guard.[1]
On May 25, 1979, Chapman filed a workmen's compensation suit against his employer, Belden Corporation, alleging that he was totally and permanently disabled from the injuries sustained on April 26, 1978 and August 12, 1978. Subsequently, in May 1980, Chapman and Belden filed amended complaints naming the Louisiana National Guard as a defendant and third party defendant. Both amended complaints alleged that Chapman was entitled to workmen's compensation from the Guard for the heart attack on August 12, 1978. In addition, Belden sought recovery from the Guard of all medical and compensation benefits paid to Chapman following the heart attack.
After trial on the merits, the court found Chapman to be totally and permanently disabled. Judgment was rendered in favor of Chapman and against Belden for workmen's compensation benefits of $138.00 per week for one hundred weeks under R.S. 23:1221(4)(p) "since plaintiff was working in pain." Belden was given credit for social security benefits paid to Chapman pursuant to R.S. 23:1225.
The trial court also awarded Chapman workmen's compensation benefits from the *398 State of Louisiana, through the Louisiana National Guard, at the rate of $961.37 in benefits on a monthly basis from the date of the heart attack on August 12, 1978 and continuing for the period of disability.
Only the state applied for writs to this court. Accordingly, the lower court's holding in regard to Chapman's action against Belden is final.
Concededly, plaintiff is totally and permanently disabled. However, in order to recover benefits under the Louisiana Workmen's Compensation Law, the employee must establish that he received a "personal injury by accident arising out of and in the course of his employment." R.S. 23:1031. Heart attacks have been held to be accidents within the purview of our workmen's compensation laws. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La.1982); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969). "An accident that happens while an employee is actively engaged in the performance of his duties during working hours will be regarded as having occurred in the course of his employment...." 1 W. Malone & H. Johnson, Workers' Compensation § 161 in 13 Louisiana Civil Law Treatise 303 (2d Ed. 1980).
Plaintiff claims that he is disabled as a result of a myocardial infarction triggered by his activities as a cook on a regular weekend drill with the Louisiana National Guard.
The State of Louisiana, on behalf of the Louisiana National Guard, contends that the myocardial infarction did not arise out of and in the scope of his National Guard duty. Instead, the state argues that the heart attack was the result of hypertension and the stress that Chapman was under while employed at Belden Corporation.
The plaintiff carries the burden of proving by a preponderance of the evidence that there is a connection between the heart attack and the employment activity. Hammond v. Fidelity & Casualty Co. of New York, 419 So.2d 829 (La.1982); Guidry v. Sline Industrial Painters, Inc., supra.
Chapman was forty-six years old when the heart attack occurred. He was slightly obese[2] and had been undergoing treatment since 1973 for hypertension. Arteriosclerotic heart disease was diagnosed as the underlying cause of his myocardial infarction. Plaintiff's regular physician, Dr. Chaudhry, testified that plaintiff smoked, an additional factor that often aggravates a preexisting heart condition. Dr. Rufus Craig, a cardiologist, disclosed at his deposition that plaintiff "said that for thirty years he smoked a half a pack of cigarettes a day and he stopped when he had his first heart problem in August of 1978."
Chapman has been a patient of Dr. Chaudhry, a physician specializing in internal medicine, since 1977. Dr. Chaudhry stated that he first began treating plaintiff for headaches and high blood pressure and then later discovered that he also "had a renal vascular problem with a partial obstruction of one of the vessels of the kidneys."
On August 12, 1978, the day of the heart attack, plaintiff left for his duty at the National Guard "somewhere close to 7:00." On his way, he and some of the other Guardsmen stopped at the grocery store to purchase food and supplies. Chapman testified that he rode in the truck "with the other boys" and waited for them while they shopped. He did not assist in loading or unloading the groceries due to his back problem.
Chapman and six other cooks prepared the noon meal for approximately one hundred and twenty men in the kitchen at the armory. Chapman testified that he was "cooking over a stove most of the time. Standing right over the stove cooking. Most of the time I cooked the meat." The stove was a gas powered range. When Chapman's attorney asked him if the kitchen was hot like most commercial kitchens *399 are, Chapman admitted "It wasn't very hot, no, sir." Later another attempt was made to establish that plaintiff was working in a heated cooking area. Questioned if he could recall whether or not it was hot in the kitchen, Chapman replied "No, sir. I don't remember."
In response to inquiries concerning the size of the pans and the weight of the meat that he cooked, Chapman answered "I didn't lift them. I had other people lift them for me. They knowed my back was hurting and they lifted the pans for me." Chapman's responsibilities included watching the food that was cooking and adding the necessary ingredients at the proper time. He cooked in two pans "about 18 inches long" and any water that was needed was poured into the pans once they were on the stove.
After the meat was cooked and the meal was served, Chapman and the other cooks "cleaned the kitchen up" and then went home. Chapman was asked whether he suffered any shortness of breath while he was cooking and cleaning up. He responded "I may have had some shortness, but I can't remember."
The trial judge was of the opinion that the plaintiff's duties in the kitchen created a strain on his heart. In his written reasons for judgment for the plaintiff, he stated:
"I find that his work place for the Louisiana National Guard was hot and his duties were strenuous and that within the meaning of the Louisiana Workman's (sic) Compensation Act, that his duties and the preformance (sic) of those duties as enlisted cook for the Louisiana National Guard were the cause in fact of the myocardial infartion (sic) suffered during the afternoon or early evening of August 12, 1978 by this plaintiff."
This court accords great weight to the factual findings of the trier of fact. Where there is a conflict in testimony, this court generally will not disturb reasonable evaluations of credibility and reasonable inferences of fact made by the trial court. Roussel v. Colonial Sugars Co., supra; Canter v. Koehring Co., 283 So.2d 716 (La.1973).
This record, however, does not contain evidence of facts sufficient to support a finding that the National Guard duties caused the heart attack. Chapman was the only witness who testified as to his activities at the Guard on August 12, 1978. He stated at trial that the kitchen was not very hot, contrary to the findings of the trial judge that the cooking area was hot. In addition, his duties were not strenuous and did not involve any unusual stress or strain. The myocardial infarction occurred at least five hours after he completed his drill with the Guard. Chapman testified that he began to have chest pains around 7:00 p.m., the night of August 12, 1978.
After considering the medical testimony, we find that it also fails to show a causal connection between plaintiff's activities at the National Guard and the heart attack that he suffered later that evening. At his deposition counsel questioned Dr. Chaudhry, plaintiff's attending physician:
"Q. Doctor, when we try to relate an infarction such as Mr. Chapman had to his work, basically what we're doing is speculating or just kind of guessing?
A. Right."
On cross-examination of Dr. Chaudhry, counsel for Belden Corporation inquired:
"Q Doctor, let me pose to you a hypothetical question. If we have a gentleman who is very similar, has many of the similar factors or all of the factors which Mr. Chapman had in August of 1978, whose job is that of a supervisor, working in an air conditioned environment, doing relatively light work, then goes from that into an environment one day to a heated environment over a big stove cooking for a lot of people, lifting heavy pots, is this not the type of unaccustom to physical strain which will trigger an acute episode of or an infarct?
A I cannot answer that, I am sorry."
Then later in the trial, counsel for plaintiff asked Dr. Chaudhry:
"Q Do you feel that his work at the National Guard preparing a meal for 120 *400 men in a commercial type kitchen with the heat that it involves, and I assume that he only did this once a month, and he was on a two day drill, do you feel that because of Mr. Chapman's prior history of hypertension, smoking, being overweight, that that made him a more likely candidate for a myocardial infarction?
A I cannot answer that. I do not know at this point. I cannot answer that."
Dr. Rufus Craig also examined plaintiff on two occasionsthe first time in September of 1979 and the second time in February of 1981. Plaintiff did not mention to Dr. Craig that he was a member of the Louisiana National Guard, even though Dr. Craig noted that he usually asked his patients about their employment. He was unaware of plaintiff's activities with the Guard,[3] and was unable to give an opinion on the causal relationship between plaintiff's Guard activities and his heart attack.
An orthopedic surgeon, Dr. T.E. Banks, was deposed concerning his examination of plaintiff's back. His examination was confined to plaintiff's spine, so he did not feel qualified to express an opinion as to plaintiff's heart condition.
The medical testimony, along with the testimony of the plaintiff, suggests only a possibility of a causal relation between his employment at the National Guard and his disability. Plaintiff was not on the job when his heart attack occurred. His duties with the Guard earlier that day required very little physical effort or exertion; plaintiff did not experience unusual stress or strain on the job that day. Furthermore, there is no evidence of any incident occurring during the course of his employment which marked the onset of his disability. Plaintiff did not remember experiencing any shortness of breath while on duty or any other indication that he was suffering a myocardial infarction. He did not complain of chest pains or exhibit symptoms of heart trouble observable to others while on drill with the Guard. His tasks with the Guard on August 12 were completed without incident. The evidence in this case is insufficient to show that the myocardial infarction was related to his duties with the National Guard. The testimony does not show that more probably than not an employment accident took place that had a causal relation to the disability. The essential proof is lacking in the present case.
Whatever causal relationship there need be between the employment and the disability, it is not present in this case.[4] That causal relationship is normally established, under the compensation statute, by finding that the accident was one "arising out of and in the course of his employment." It did not arise out of the National Guard employment; nothing happened at work which any witness could relate to the onset of the myocardial infarct. The heart attack did not happen in the course of employment; it happened five hours later, at Chapman's home. The only connection between the employment and the heart attack was that they happened on the same day.
For these reasons, the judgment of the court of appeal is reversed in part, and it is now ordered that there be judgment in favor of the defendant, State of Louisiana, through the Louisiana National Guard, and against the plaintiff, Ezra Chapman, dismissing his suit, at his cost.
*401 WATSON, J., dissents believing the Court of Appeal to be correct except for the rate of compensation.
NOTES
[1] Belden reinstated workmen's compensation benefits for Chapman in August of 1978 and paid him in excess of $26,000 in accident and sickness benefits and medical expenses through July of 1979. During this same period, even though he did not return to his duties with the Louisiana National Guard after August 12, 1978, Chapman was paid for two drills that he did not attend and was further provided with SGLI insurance, a normal benefit for all employees of the Louisiana National Guard. None of these benefits were earned.
[2] In September of 1979, Dr. Rufus Craig, a cardiologist, recorded plaintiff's weight at one hundred ninety-two pounds and his height as six feet one-half inch. For his height and age, Dr. Craig stated that his weight should average one hundred seventy pounds.
[3] At Dr. Craig's deposition, the following exchange occurred:

"Q. At any time in your records did Mr. Chapman indicate that he was a member of the Louisiana National Guard?
A. I don'tno, sir, I don't think so. I didn't note it in either of these histories here. I ordinarily with patients, and I did with him, talk to them about you're a working man and you're not working, what do you do with your time? I do this with my private patients to get some idea of what their activities are and what they can do at home and what they are doing at home. But I don't remember him mentioning the National Guard, though."
[4] See the discussion of "Physical Harm Resulting from Emotional Excitement" and "`Increased Risk' in Heart Cases" in Johnson, Developments in the Law, 1981-1982Workers Compensation, 43 La.L.Rev. 613, 614-616 and 617-621 (1982). See also 1 W. Malone & H. Johnson, Workers' Compensation §§ 141-263 in 13 Louisiana Civil Law Treatise 271-592 (2d Ed.1980).