[No. 51821–1.   En Banc.   July 31, 1986.]

THOMAS L. EMSLEY, SR., *as Personal Representative, ET AL, Respondents,* v. THE ARMY NATIONAL GUARD, *Petitioner.*

---

*Kenneth O. Eikenberry, Attorney General,* and *Virginia O. Binns* and *Jon P. Ferguson, Assistants,* for petitioner.

*Edwards & Barbieri,* by *Malcolm L. Edwards* and *Catherine W. Smith; Douglas B. Ehlke* and *James Beard (Fred G. Scott, Jr.,* of counsel), for respondents.

*Gene S. Anderson, United States Attorney,* amicus curiae for petitioner.

BRACHTENBACH, J.—This case presents the question whether the State of Washington may be sued for torts committed against United States Army personnel by members of the Washington National Guard. We hold that the State is not immune from suit, and in so holding, we affirm the trial court denial of the State's motion for dismissal.

On August 20, 1983, five United States Army soldiers on active duty were marching along a public road at Fort Lewis. A howitzer shell, fired moments earlier by members of the Washington National Guard as part of a training exercise, exploded next to the road. The explosion severely injured three and killed two of the United States Army sol-

diers. The record contains substantial evidence that the National Guard gunnery team was negligent. It is alleged that the point of impact was three–fourths of a mile off target.

The three injured servicemen and representatives of the estates of the two deceased soldiers filed separate actions against the National Guard and the State of Washington. After the actions were consolidated by the trial court, the State moved for dismissal under CR 12(b)(6), or, in the alternative, CR 56. The trial court denied the State's motion and set a trial date. In the interim, this court granted the State's motion for discretionary review of the trial court's denial of dismissal.

Despite lack of clarity in the motion for dismissal and subsequent order, we treat the trial court order denying the State's motion for dismissal as one based on summary judgment. The trial judge, in reaching his decision, considered numerous affidavits and depositions offered by both parties. Consideration of these materials was necessary, because they presented the factual question whether the National Guard was in state or federal status at the time of the incident. Such status is crucial to a determination of the presence or absence of state immunity, with which this appeal is solely concerned. Thus, the trial court properly treated the State's motion as one for summary judgment.

The State maintains that it is immune to suit on either of two theories: (1) the National Guard was in active federal service at the time of the firing incident; thus, the State is immune through application of the *Feres* doctrine (*see Feres v. United States,* 340 U.S. 135, 95 L. Ed. 152, 71 S. Ct. 153 (1950)); or (2) the National Guard was in state status at the time of the incident, but, notwithstanding the blanket waiver of tort immunity of RCW 4.92.090, the State is immune through fulfillment of the criteria announced in *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965). We hold that the State cannot prevail under either theory.

The State first contends that it is immune to suit under

the rule announced in *Feres v. United States, supra.* The *Feres* doctrine prevents service personnel injured in activities incident to military service from bringing suit against the federal government or fellow members of the federal armed services. Thus, for *Feres* to be applicable to this case, the National Guard must have been in active federal service rather than state service when the gunnery team fired the howitzer. Whether the National Guard is in federal or state status at a given time is determined by the United States Constitution, the Washington Constitution, and federal laws.

The foundation of each state's militia, forerunner of the modern National Guard, is U.S. Const. art. 1, § 8, cl. 16. Clause 16 empowers the United States Congress to organize, arm and discipline the militia, but it specifically reserves to the states the responsibility for *training* the militia.

The Washington Constitution also provides for maintenance of a militia. Const. art. 10, § 2 dictates that Washington shall maintain a state militia in a manner not incompatible with the United States Constitution and United States laws. Since the United States Constitution specifically reserves training of the National Guard to the states, and the Washington Constitution mandates compatibility with the United States Constitution and with federal laws, the Washington Constitution impliedly vests responsibility for National Guard training in the state. Moreover, we have specifically recognized this training responsibility. In *Hupe v. Coates,* 95 Wn.2d 56, 60, 621 P.2d 726 (1980), we said: "the Governor, as commander–in–chief, is in direct control of and responsible for the training, condition and performance of the Washington National Guard."

The incident in this case occurred during a National Guard training exercise. National Guard training, under both the United States and Washington Constitutions, is a state function. Thus, the National Guard was in state status during the subject training maneuvers unless federal law dictates otherwise.

Federal law regulating states' National Guard units is included in Titles 32 and 10 of the United States Code. Of these laws, 10 U.S.C. § 3495 and 10 U.S.C. § 3500 are relevant for purposes of establishing whether a National Guard unit is in federal or state status at a given time. Section 3495 states:

Members of the Army National Guard of the United States are not in active Federal service except when ordered thereto under law.

The National Guard may be ordered into active federal service pursuant to 10 U.S.C. § 3500, which establishes the grounds and procedures for such an order. This section provides, in pertinent part:

[T]he President may call into Federal service members and units of the Army National Guard of any State . . . in such numbers as he considers necessary to repeal [*sic*] the invasion [of a foreign nation], suppress . . . rebellion, or execute those laws [which the President is unable with the regular forces to execute].

10 U.S.C. § 3500.

The record in this case is clear that no state of emergency existed at Fort Lewis on August 20, 1983 such as that contemplated by 10 U.S.C. § 3500, and no "call" by the President had placed the National Guard in active federal service on that date. The National Guard was therefore in state status on the day in question. The case law is in accord: *Maryland ex rel. Levin v. United States*, 381 U.S. 41, 14 L. Ed. 2d 205, 85 S. Ct. 1293 (1965) (the state governor is in charge of the National Guard in each state except when the Guard is called into active federal service); *Greenwood v. Department of Military Affairs*, 78 Pa. Commw. 480, 468 A.2d 866 (1983) (National Guard is in state status unless called into active federal service pursuant to 10 U.S.C. §§ 3495 and 3500). Because we have determined that the National Guard was in state status, rather than federal service, at the time of the training incident, we find the *Feres* doctrine inapplicable to this case.

The State next contends that it cannot be sued, notwith-

standing state status of the National Guard, because it meets the criteria announced in *Evangelical United Brethren Church v. State, supra,* for reinstating tort immunity which would otherwise be waived by RCW 4.92.090. This contention also fails.

The State, through its National Guard, is accused of tortious conduct. Based on concepts of sovereign immunity, the State cannot be sued for such conduct unless it has waived its immunity to suit. *O'Donoghue v. State,* 66 Wn.2d 787, 789, 405 P.2d 258 (1965).

This State has waived such immunity. In 1961 the Legislature adopted RCW 4.92.090, which provides (as amended in 1963):

> The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation.

RCW 4.92.090.

Although the Legislature, through RCW 4.92.090, created a blanket waiver of sovereign immunity for tortious conduct, we have carved out a narrow exception to the waiver. In *Evangelical United Brethren Church v. State, supra,* we recognized governmental immunity from tort liability for discretionary acts. We reasoned that organized society requires room for basic governmental policy decisions and implementation of those decisions, without threat of sovereign tort liability. *Evangelical,* at 254.

In order that a decision of a governmental official or agency qualify for immunity under the *Evangelical* exception, four questions must be affirmatively answered:

> (1) Does the challenged act . . . necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act . . . essential to the realization . . . of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act . . . require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved

possess the requisite . . . authority and duty to do . . . the challenged act . . .?

*Evangelical,* at 255.

The *Evangelical* inquiry focuses on the nature of the acts of a governmental agency. The governmental agency in this case is the National Guard gunnery team, which was directed to fire artillery on training maneuvers, pursuant to order of the Governor of Washington as commander–in–chief of the National Guard. Unless the actions of this gunnery team satisfy all four *Evangelical* criteria, the *Evangelical* exception will not immunize the State from suit for the torts of the gunnery team.

The first, second, and fourth prongs of *Evangelical* are met. The challenged act (firing the howitzer) involved the basic governmental objective of training the National Guard. Furthermore, firing artillery is essential to realization of the goal of a National Guard which is trained to fire artillery. Finally, there has been no challenge to the gunnery team's authority to engage in this firing as part of its training maneuvers.

It is the third question of the *Evangelical* test which cannot be answered affirmatively. That question asks whether the act performed by the government agency required a *policy* evaluation. As we stated most recently in *Miotke v. Spokane,* 101 Wn.2d 307, 678 P.2d 803 (1984), the discretionary activity protected by the *Evangelical* exception includes only basic policy discretion. *Miotke,* at 336 (citing *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975)). The act performed by the gunnery team in this case required no policy evaluation. The team's job was to safely and effectively fire a piece of artillery. Such a job required that the gunnery team make decisions; however, the decisions were of the type requiring experience, care, and knowledge of proper procedures. As such, any decisions to be made by the team were operational, not policy decisions.

The gunnery team's operational decisions are closely analogous to those of the city and state police officers in

*Mason v. Bitton, supra.* In *Mason,* we distinguished the type of discretion "exercised at a truly executive level, to which immunity was granted, from that discretion exercised at an operational level, which, if done in a negligent fashion, would subject the government to liability." *Mason,* at 328. In making such a distinction, we held that the decision of state and city police officers to engage in a high speed chase which resulted in two deaths involved discretion at an operational, rather than executive level. Such operational decision could not immunize the city and state governments from suit. Similarly, the decision of the gunnery team in this case regarding setting, safety–checking, and firing the howitzer involved an operational rather than executive level decision. Thus, under *Mason,* the State of Washington is not immune from suit for the torts of its National Guard gunnery team.

Since the National Guard was acting in its state capacity at the time of the deaths and injuries suffered by United States Army personnel, and the State is not entitled to immunity under *Evangelical* and its progeny, the State of Washington is not immune to suit in this instance. Accordingly, the trial court refusal to grant dismissal in favor of the State is affirmed.

DOLLIVER, C.J., and UTTER, PEARSON, and GOODLOE, JJ., concur.

CALLOW, J.—I concur in the result. The plaintiffs seek $14,575,000 from the State of Washington in addition to their federal benefits.

FIRST: If an active member of the armed services of the United States is injured or killed by another active member of the armed services of the United States while both are on duty, recovery for that injury or death is limited by *Feres v. United States,* 340 U.S. 135, 95 L. Ed. 152, 71 S. Ct. 153 (1950). The *Feres* doctrine provides that United States Army personnel may recover against the United States for injuries suffered in the service only through the

federal compensation system defined by statute.

As stated in *Feres* on page 146:

We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law.

SECOND: If a member of the Washington State National Guard is injured or killed while on duty by another member of the Washington State National Guard also on duty, the recovery for injury or death is limited by *Wark v. Washington Nat'l Guard*, 87 Wn.2d 864, 865, 557 P.2d 844 (1976), which held:

RCW 38.40.030 . . . provides the exclusive remedy for militiamen injured in the course of duty. That section provides that any officer or enlisted man of the organized militia, who is wounded or otherwise disabled (or his dependents if he dies) while in active service, shall receive from the State "just and reasonable relief" in an amount to conform as nearly as possible to the general schedule of payments and awards provided under the workmen's compensation law in effect in the state at the time of the disability or death.

This formula for recovery may be expanded by 32 U.S.C. § 318 if federal funds supported the activity. *Chapman v. Belden Corp.*, 414 So. 2d 1283 (La. Ct. App. 1982).

THIRD: If a member of the Washington State National Guard, while on active or training duty, is injured or killed by an active duty member of the armed services of the United States, recovery for the death or injury is also limited by *Wark v. Washington Nat'l Guard, supra;* RCW 38.40.030. *See also Layne v. United States*, 295 F.2d 433 (7th Cir. 1961), *cert. denied,* 368 U.S. 990 (1962). *Edgar v. State*, 92 Wn.2d 217, 595 P.2d 534 (1979), *cert. denied,* 444 U.S. 1077 (1980), states at page 223:

In *Wark,* we held that RCW 38.40.010–.030 provides the exclusive remedy for National Guardsmen wounded, killed or disabled in the line of duty. In interpreting our statutes, we noted the similarity of RCW 4.92.090 to the

federal tort claims procedure act, 28 U.S.C. §§ 2671–2680 (1970), and the fact that the federal government provides a compensation system for members of the military similar to that which is provided in this state for guardsmen. We cited *Feres v. United States, supra,* wherein the United States Supreme Court had held that it was not the intent of Congress to provide an additional remedy for those whose claims were already expressly provided for in another statute.

The high court in *Feres* had also said that the military activities of government are so unique that there is no comparable function in the private sector and thus no common–law action in which a private person would be liable under similar circumstances.

(*But see* 10 U.S.C. § 2733 permitting limited claims against the United States for personal injuries or death caused by a member of the armed services incident to noncombat activities.)

Under the foregoing three illustrations (1) Army injures Army, (2) Guardsman injures Guardsman, and (3) Army injures Guardsman, the general rule is limited recovery under a statutory scheme of compensation.

The narrow opening through which this action is allowed to pass is the absence of statutory directive and the chink in governmental immunity discussed in *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965). In that case a 14–year–old boy in the juvenile correctional facility at Green Hill escaped and set fire to a church. The plaintiffs alleged that the State was negligent and that the school had applied only minimal security measures to the boy when it knew, or should have known, that he had a propensity for setting fires. The opinion sets forth the four questions which must be answered in the affirmative if the challenged act is to be classified as a discretionary governmental action for which the State is immune from liability. The opinion states in part:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that

policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Evangelical Church,* at 255. The opinion found that each of the four questions was to be answered in the affirmative and that there was no State liability.

The decision of the majority holds that the State does not have immunity from suit in the case before us since the act of firing the 155 mm. howitzer did not require the exercise of a basic policy judgment (interrogatory 3 of *Evangelical Church*), but was merely a negligent operational action by the Guardsmen who fired the piece. *See Barnum v. State,* 72 Wn.2d 928, 435 P.2d 678 (1967). I acknowledge that the negligent aiming of the artillery and its firing did not involve a high level discretionary act exercised at a truly executive level. *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 669 P.2d 451 (1983). I agree that when RCW 4.92.090 opened the door to suits against the State, the State Legislature restricted recovery by the militia as noted, but did not preclude actions for injury to United States military personnel caused by National Guardsmen.

In any event, in the situation before us where members of the armed services of the United States have been injured or killed by the negligence of a member of the Washington State National Guard while on training duty, the limitations do not apply and the State of Washington is held liable under a direct civil suit against the State. There is no logical justification for treating this fourth circumstance, Guardsman injures Army, differently than the injured service person in the other three situations.

The injured Army personnel involved in the case before us have full military death, treatment, disability and dependent benefits available for their injuries through

Titles 10 and 38 of the United States Code, the statutory military and veterans' administration entitlements which have been and are being provided. There is no question but that the plaintiffs in this action are entitled to compensation as well as sympathy and compassion for their loss. However, the circumstances in this case apparently were not contemplated by the Legislature of the State of Washington or by the Congress of the United States. Where under the three circumstances recited a person injured in the service of his country would be entitled only to a sum set by statute, in this situation, simply by virtue of his status or insignia on his blouse, the State is required to pay, in addition to the federal benefits, as if the injured party had been a civilian. Two compensations will result. Compare *Lundeen v. Department of Labor & Indus.*, 78 Wn.2d 66, 469 P.2d 886 (1970).

A soldier in the field serves his country at great risk. He can never be fully compensated for the risks to life and limb that he undertakes. Nor can his country or state fully compensate him other than by honors and gratitude. The risks a soldier takes in the field are part of the price he must pay for living in a free society.

It would be a perfect world if the plaintiffs in this case could be properly compensated. However, it is not proper to compensate them on a different basis or more generously than others who are serving in a different status would be compensated in a like situation. I concur with the majority because the law does not preclude the recovery it allows and makes this recovery possible. However, it appears that this is a matter which has dropped between the cracks and should be corrected by the Legislature.

DORE, ANDERSEN, and DURHAM, JJ., concur with CALLOW, J.

Reconsideration denied October 2, 1986.