FARRIER, APPELLANT, *v.* CONNOR, ADMR., ET AL., APPELLEES.

[Cite as Farrier *v.* Connor (1984), 12 Ohio St. 3d 219.]

(No. 83-686—Decided August 1, 1984.)

*Mr. Arthur C. Graves* and *Mr. Robert J. Perry,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Douglas M. Kennedy,* for appellees.

*Per Curiam.* The central question presented before this court is whether appellant's decedent, as a member of the Ohio National Guard, was an employee of the state of Ohio under R.C. Chapter 4123, the workers' compensation provisions.

When Ohio's workers' compensation statutes were first promulgated, members of the National Guard were ineligible to recover benefits from the State Insurance Fund. Then, in 1959, the General Assembly extended special coverage to National Guard members, and enacted several statutes, in 128

Ohio Laws 743, which specifically addressed this employment status.[1] Two of these statutes are determinative of the instant action, and provide as follows:

"Every member of the Ohio organized militia as defined in section 5923.01 of the Revised Code shall, *when called to state active duty*, be in the employment of the state for the purposes of sections 4123.01 to 4123.94, inclusive, and 4123.99 of the Revised Code." (Emphasis added.) R.C. 4123.022.

" 'State active duty' means that status attaching to a member of the Ohio organized militia performing duty ordered by competent state authority, for which duty status injury and occupational disease benefits are not otherwise provided by act of the congress of the United States or executive regulations of the United States." R.C. 4123.021.

Under this clear directive, in order for a member of the National Guard to be considered an employee of the state of Ohio for the purposes of the state workers' compensation law, a two-prong test must first be satisfied: (1) the member must be ordered to state active duty by competent state authority; and (2) federal benefits are not otherwise provided the member, for which duty he or she is serving.

With respect to the first prerequisite, counsel for appellees conceded at oral argument that appellant has met the requirement that the duty be ordered by competent state authority. Although decedent was ordered to training duty pursuant to Section 503, Title 32, U.S. Code, such training orders were issued through the Ohio Adjutant General's department. Thus, it could be said that decedent was ordered to duty by both state and federal authorities.

However, with respect to the second prerequisite, appellant advances several arguments. It is appellant's contention that *Maryland* v. *United States* (1965), 381 U.S. 41, and *Spangler* v. *United States* (S.D. Ohio 1960), 185 F. Supp. 531, hold that members of a ·state National Guard are employees of the state, and not the federal government. We find, however, that these cases are readily distinguishable from the instant action in that both holdings were premised on the definition of "employee" under Section 1346, Title 28, U.S. Code, the Federal Tort Claims Act. As such, we find that neither case is controlling in the context of Ohio's workers' compensation provisions.

Appellant next argues that by virtue of our decisions in *Indus. Comm.* v. *Davis* (1933), 126 Ohio St. 593, and *State, ex rel. Jones & Laughlin Steel Corp.,* v. *Dickerson* (1953), 160 Ohio St. 223 [53 O.O. 86], her claim under R.C. 4123.59 as a dependent of the decedent is a separate and independent claim from that which her late husband could have claimed, and, thus, should be adjudicated on its own merits.

While it is true that a widow or dependent's claim is determined on its own merits as a separate action, the dependent's claim must nevertheless be based on an injury, occupational disease or death which occurred as a result of an Ohio employment.

---

[1] Young, Workmen's Compensation Law (2 Ed. 1971) 320, Section 20.10.

The record in this case reveals that appellant was eligible for, and did in fact receive, a death gratuity provided in Section 321, Title 32, U.S. Code, plus a burial allowance and a $20,000 life insurance policy from the federal government. The record also indicates that appellant would have been eligible for other federal benefits had she not remarried.

With this in mind, we hold that appellant is precluded from participating in the State Insurance Fund, since the definition supplied in R.C. 4123.021 and 4123.022 prevents her deceased husband from being considered an employee of the state of Ohio, inasmuch as benefits were provided by the federal government. In so holding, we are mindful of the fact that the legislature intended to exclude National Guard members from participating in the State Insurance Fund if the duty status which the member was ordered to, consisted of the regular training exercises.

"* * * In 1963, the definition of State active duty was clarified to exclude the regular training periods. 130 Ohio Laws 919. The Common Pleas Court of Franklin County had held in case number 212762, *Williams* v. *Young,* unreported, that a member of the National Guard was on State active duty in returning from the regular summer encampment." Young, Workmen's Compensation Law of Ohio (2 Ed. 1971) 320, Section 20.10. See, also, *McComas* v. *Ohio National Guard* (1980), 69 Ohio App. 2d 87 [23 O.O.3d 128].

Appellant submits that the workers' compensation enabling provision, found in Section 35, Article II of the Ohio Constitution, sets forth a "trilogy" of compensable occurrences by which an employee may recover benefits under the workers' compensation statutes. It is appellant's contention that since R.C. 4123.021 does not mention "death" benefits, the legislature did not intend to foreclose a dependent from recovering those benefits.

We find this argument to be unpersuasive. If we were to adopt appellant's position, our interpretation, as such, would lead to the incongruous finding that a National Guard member would not be a state employee when federal benefits were provided for an injury or occupational disease, but that the same guard member would be a state employee when the injuries sustained had resulted in the member's death.

The policy reasons behind the exclusion set forth in R.C. 4123.021 are readily ascertainable. The General Assembly intended to prevent a double recovery from both the state and federal government for the same injury, death or occupational disease.

Although workers' compensation provisions are remedial in nature, and R.C. 4123.95 requires that these provisions be "* * * liberally construed in favor of employees and the dependents of deceased employees," R.C. 4123.022 seemingly excludes the operation of this liberal construction provision by its own terms. Further, liberal construction of R.C. 4123.021 cannot overcome the clear and unequivocal language promulgated by the General Assembly. As this court stated in paragraph two of the syllabus in *Szekely* v. *Young* (1963), 174 Ohio St. 213 [22 O.O.2d 214]:

"A direction to liberally construe a statute in favor of certain parties will not authorize a court to read into the statute something which cannot

reasonably be implied from the language of the statute." See, also, *Felske* v. *Daugherty* (1980), 64 Ohio St. 2d 89, 91 [18 O.O.3d 313].[2]

R.C. 4123.021 ensures that a National Guard member, when ordered to duty by competent state authority, will be eligible for state workers' compensation benefits, if benefits are not otherwise provided by the federal government.[3] Compensation for injury and occupational disease is specifically provided for National Guard members who are participating in summer exercises under Sections 318, 319 and 320, Title 32, U.S. Code. Thus, the duty status in which the deceased was serving pursuant to Section 503, Title 32, U.S. Code, made him ineligible for state compensation benefits even if he had survived, inasmuch as these statutory provisions of the United States Code clearly establish benefits "provided by act of the congress of the United States * * *." R.C. 4123.021. While we believe it is unfortunate for appellant that the drafters of the workers' compensation statutes chose to exclude from coverage members of the National Guard who are eligible for federal benefits, we are nevertheless bound to interpret the clear and unambiguous intent of the General Assembly in accordance with our constitutional mandate.

Lastly, appellant argues that the denial of her participation in the State Insurance Fund constitutes an unreasonable classification in violation of the Equal Protection Clauses of the United States and Ohio Constitutions, and amounts to a denial of due process of law.

In support of her equal protection argument, appellant relies on *State, ex rel. Nyitray,* v. *Indus. Comm.* (1983), 2 Ohio St. 3d 173, and contends that the effort to preclude dependents from obtaining simultaneous recovery from both federal and state compensation funds is not rationally related to the accomplishment of some legitimate state objective.

We find appellant's reliance on *Nyitray* to be misplaced. In *Nyitray,* this court held, as unconstitutional, a provision in the workers' compensation statutes which, in effect, denied accrued but unpaid benefits to dependents of workers who died from work-related causes, while compensating dependents of workers who died from causes other than a compensable injury or occupational disease. However, the situation presented in the instant case is totally different. Here, the deceased, had he survived, would have been ineligible to receive workers' compensation benefits by virtue of R.C. 4123.021 and 4123.022. By the same token, decedent's surviving spouse is ineligible to

---

[2] Likewise, in spite of appellant's urgings, we refrain from reading into R.C. 4123.541 (the setoff provision for civil defense workers or dependents who receive federal benefits) any application to National Guard members and the provisions set forth in R.C. 4123.021 to 4123.025, inclusive.

[3] It should also be noted that some jurisdictions, unlike Ohio, do not consider state National Guard members to be state employees under any circumstances, pursuant to their state workers' compensation laws. See, *e.g., Pa. Commonwealth* v. *Workmen's Comp. Appeal Bd.* (1981), 63 Commw. 1, 437 A. 2d 494; and *Lind* v. *Nebraska National Guard* (1944), 144 Neb. 122, 12 N.W. 2d 652.

receive state workers' compensation death benefits under R.C. 4123.59, because the decedent was not on state active duty pursuant to the relevant statutes, and *ipso facto,* was not an employee of the state of Ohio.

In any event, by applying the test of equal protection set forth in *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143 [30 O.O.2d 491], paragraph two of the syllabus, approved and followed in paragraph three of the syllabus in *State* v. *Buckley* (1968), 16 Ohio St. 2d 128 [45 O.O.2d 469],[4] we hold that the legislature had reasonable grounds for making the distinction set forth in R.C. 4123.021 (*i.e.,* to prevent simultaneous recovery by a National Guard member from both the state and federal governments).

Similarly, we find no merit in appellant's contention that R.C. 4123.021 denies her due process of law under Section 16, Article I of the Ohio Constitution.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

W. Brown, Sweeney, Locher and Holmes, JJ., concur.

Celebrezze, C.J., C. Brown and J. P. Celebrezze, JJ., dissent.

Celebrezze, C.J., dissenting. For reasons that have completely eluded this writer, a majority of this court has chosen to ignore the plain and unambiguous language of R.C. 4123.021. I must therefore dissent.

"The Widow's Uniform is not the soldier-man's disgrace."[5]

R.C. 4123.021 defines "state active duty" as "that status attaching to a member of the Ohio organized militia performing duty ordered by competent state authority, *for which duty status injury and occupational disease benefits are not otherwise provided* by act of the congress of the United States or executive regulations of the United States." (Emphasis added.)

While conceding that the decedent's duty was ordered by a competent state authority, the majority concludes that appellant is precluded from receiving workers' compensation benefits since appellant's decedent was eligible for federal "duty status injury and occupational disease benefits." Nevertheless the majority only identifies two sources of federal compensation: a death gratuity which included a burial allowance, and a life insurance policy. There is no question that these are indeed federal benefits. However, they are clearly not benefits designed to compensate for "duty status injury"

---

[4] That test states that:

"Legislation must apply alike to all persons within a class, and reasonable grounds must exist for making a distinction between those within and those without a designated class. Within the limits of those restrictive rules, a legislative body has a wide measure of discretion." *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143 [30 O.O.2d 491], paragraph two of the syllabus.

[5] "Tommy" by Rudyard Kipling.

or "occupational disease." Rather, the federal benefits for which appellant's decedent was eligible accrued only upon death. For instance, had appellant's decedent survived the accident which took his life, there is no indication that he would have been eligible for any federal benefits whatsoever.

The import of R.C. 4123.021 is that the General Assembly intended that members of the National Guard be allowed to participate in the State Insurance Fund even where the federal government provides certain death benefits. Had the General Assembly intended that eligibility for federal death benefits foreclosed participation in the fund, they most certainly would have so provided in the statute. Likewise, the General Assembly could have provided that eligibility for *any* federal benefits would remove a National Guard member from workers' compensation coverage. Although the majority interprets the statute to read that way, it is gravely mistaken.

The majority evidently believes that, if appellant's argument were accepted, the National Guard member would be entitled to participate in the fund when he dies in the course of his service, but not when he is injured. That the majority would characterize appellant's argument in such a way evidences its confusion, if not its error, in dealing with this issue. The question presented in the instant case is whether R.C. 4123.021, irrespective of the facts herein, commands that a National Guard member is on "state active duty" when the only federal benefits that are provided are death benefits. The resolution of this question is not dependent upon a consideration of a hypothetical factual situation, but instead upon a fair construction of a plain statute.

Unfortunately, the majority expresses an altogether too familiar attitude toward military service. One noted author put it this way:

"For it's Tommy this, an' Tommy that, an' 'chuck him out, the brute.'

"But it's 'Savior of 'is country' when the guns begin to shoot";[6]

Accordingly, I would reverse the decision of the court of appeals and hold that appellant's decedent was on "state active duty" and is entitled to Ohio workers' compensation benefits.

C. BROWN and J. P. CELEBREZZE, JJ., concur in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. I am persuaded that the majority has ignored the plain language of R.C. 4123.021 in concluding that appellant has received the kind of federal benefits therein described. Further, I believe that R.C. 4123.021, as applied in today's decision, denies equal protection of the law to members of the Ohio National Guard and their dependents. I therefore dissent.

I

The majority's mute assumption that the appellant has received the sort of federal compensation specified in R.C. 4123.021 is wholly unjustified. This

---

[6] *Id.*

statute defines "state active duty" as "that status attaching to a member of the Ohio organized militia performing duty ordered by competent state authority, for which *duty status injury and occupational disease benefits* are not otherwise provided by act of the congress of the United States or executive regulations of the United States." (Emphasis added.)

The appellant in the instant cause received a death gratuity, a burial allowance, and the proceeds of a Servicemen's Group Life Insurance Policy. These benefits were of course payable to appellant as a result of the *death* of her husband. They would obviously not be payable as "duty status injury and occupational disease benefits." Thus, it is plain that the death gratuity, burial allowance, and life insurance proceeds received by the decedent's widow simply do not qualify as duty status injury and occupational disease benefits within the meaning of R.C. 4123.021. The drafters of this provision would no doubt be dismayed by the majority's casual reading of the statute to embrace any and all federal benefits, in the face of such conspicuously limiting language.

The injury and occupational disease benefits specified in R.C. 4123.021 are those contained in Sections 301 *et seq.*, Title 38, U.S. Code, which provide for service-connected disability compensation to veterans for disability from personal injury or disease contracted in the line of duty. This clearly does not include any of the benefits paid to appellant. It is only logical that this is the kind of compensation referred to in R.C. 4123.021, since it indeed constitutes "duty status injury and occupational disease benefits" available to National Guardsmen. However, the decedent's widow in the case at bar is not eligible for these benefits, since compensation for peacetime service-connected *death* is provided elsewhere.[7] Further, appellant is not, under the instant facts, entitled to receive these service-connected death benefits because she has remarried, and is therefore not a "surviving spouse" as defined in Section 101(31), Title 38, U.S. Code.[8] Neither is she eligible for benefits under the Federal Employees' Compensation Act,[9] the general federal equivalent of the typical state workers' compensation act, because the National Guard is not an agency of the United States government while not in federal service.[10] Thus, her husband was not a federal employee at the time of his death.

---

[7] Section 401 *et seq.*, Title 38, U.S. Code.

[8] Section 101(31), Title 38, U.S. Code, provides in pertinent part:
"* * * [T]he term 'surviving spouse' means a person of the opposite sex who is a widow or widower."

[9] Section 8101 *et seq.*, Title 5, U.S. Code.

[10] Section 3078, Title 10, U.S. Code, provides:
"The Army National Guard while in the service of the United States is a component of the Army."
Section 564.52(b), Title 32, C.F.R., provides in pertinent part:
"In accordance with general principles of law, the National Guard and the Air National Guard when not in federal service are not agencies of the United States * * *."

It is evident from the foregoing that "duty status injury and occupational disease benefits" are not "otherwise provided" by the federal government, under these facts, as expressly required by R.C. 4123.021. Moreover, assuming *arguendo* that the federal service connected death benefits are in fact "injury and occupational disease benefits" under the Ohio statute, appellant is not eligible to receive these benefits; thus, these benefits are also not "otherwise provided" by federal sources. It is therefore clear that no compensation resembling that specified in R.C. 4123.021 was available to appellant, and her entitlement to Ohio workers' compensation benefits is not barred.

The death gratuity of $3,000 paid to the widow in the instant cause is created by Section 321, Title 32, U.S. Code, entitled "Death Gratuity," and is provided specifically for members of the National Guard. The burial allowance of $650 was paid to appellant pursuant to Social Security Administration[11] and Veteran's Administration[12] regulations.

The Servicemen's Group Life Insurance proceeds of $20,000 paid to appellant arose under Sections 765 *et seq.*, Title 38, U.S. Code, which provide for such insurance for active duty members of the Armed Forces. This insurance was paid for through deductions from the decedent's monthly service pay, and from the pay of other servicemen insured with him as a group, by authority of Section 769, Title 38, U.S. Code.

The federal government is giving the guardsman's widow nothing for which the guardsman himself, and other guardsmen in service as he was, have not fully paid. The federal government, by paying the insurance proceeds to the widow, is merely fully performing its obligation under an insurance contract.

Likewise, when this court stretches the language of "duty status injury and occupational disease benefits" in R.C. 4123.021 so as to include a death gratuity and a burial allowance, it engages in raw judicial legislation. Neither a death gratuity, nor a burial allowance, nor a Servicemen's Group Life Insurance Policy benefit, by any stretch of a fertile judicial imagination, is a "duty status injury and occupational disease benefit."

The blatantly erroneous analysis and result reached by this court today apparently stem from a sloppy interchange of terms. In the *per curiam* opinion, the phrase "duty status injury and occupational disease benefits" in R.C. 4123.021 is erroneously equated with *any* federal benefits.[13] None of the

---

[11] See Section 404.390, Title 20, C.F.R.

[12] See Section 3.1600, Title 38, C.F.R.

[13] In varying contexts and approaches the *per curiam* opinion reveals this incorrect equation of "duty status injury and occupational disease benefits" in R.C. 4123.021 with *any* federal benefits, by the following observations:

1. "* * * a two-prong test must first be satisfied: (1) the member must be ordered to state active duty by competent state authority; and (2) federal benefits are not otherwise provided the member, for which duty he or she is serving."

2. "* * * we hold that appellant is precluded from participating in the State Insurance Fund, since the definition supplied in R.C. 4123.021 and 4123.022 prevents her deceased hus-

federal benefits — the burial allowance, death gratuity, or life insurance proceeds — constitutes "benefits" within the meaning of the statute.

That the legislature did not intend every sort of federal benefit to fall within the purview of R.C. 4123.021 is almost too obvious to necessitate comment. A basic and time-honored maxim of statutory construction holds that, in arriving at legislative intent, a court must give effect to the words used, not delete words used or insert words not used. *Dougherty* v. *Torrence* (1982), 2 Ohio St. 3d 69, 70, citing *Bernardini* v. *Bd. of Edn.* (1979), 58 Ohio St. 2d 1, 4 [12 O.O.3d 1]. R.C. 4123.021 refers most pointedly, and exclusively, to federal benefits provided for "duty status injury or occupational disease." This court, by assuming without discussion that this phrase was meant to include death-related benefits, has clearly exceeded its authority by expanding specific statutory language to a broad, all-encompassing proposition. This departure from established standards of construction is a lamentable example of the evils of judicial inattentiveness.

The *per curiam* opinion further erroneously concludes that Farrier's widow, plaintiff Marjorie Farrier, has no right to state workers' compensation benefits because "[c]ompensation for injury and occupational disease is specifically provided for National Guard members who are participating in summer exercises under Sections 318, 319 and 320, Title 32, U.S. Code," and that these statutory provisions of the United States Code clearly establish benefits "provided by act of the congress of the United States * * *." First, the record contains no evidence that Marjorie Farrier ever *received* any of the three benefits provided in Sections 318, 319 and 320, Title 32, U.S. Code, and therefore such federal statutory benefits were not "provided by act of the congress of the United States * * *" within the meaning of that phrase as used in R.C. 4123.021. Secondly, none of these three federal statutes even *authorizes* benefits for decedent Michael Farrier or for his widow, Marjorie Farrier. Section 318 entitles a National Guard member, such as Michael Farrier, to "hospital benefits, pensions, and other compensation" while on a training exercise "(2) for any period of time, and [who] is *disabled* in line of duty from *injury* while so employed." (Emphasis added.) Section 319 entitles the National Guardsman on a training exercise "(1) who is *injured* * * * in line of duty * * *" (emphasis added) to hospitalization and medical care for a period, to basic pay and allowances, subsistence, and necessary transporta-

band from being considered an employee of the state of Ohio, inasmuch as benefits were provided by the federal government."

3. "R.C. 4123.021 ensures that a National Guard member, when ordered to duty by competent state authority, will be eligible for state workers' compensation benefits, if benefits are not otherwise provided by the federal government."

4. "* * * it is unfortunate for appellant that the drafters of the workers' compensation statutes chose to exclude from coverage members of the National Guard who are eligible for federal benefits, * * *."

5. "* * * we hold that the legislature had reasonable grounds for making the distinction set forth in R.C. 4123.021 (*i.e.,* to prevent simultaneous recovery by a National Guard member from both the state and federal governments)."

tion incident to hospitalization. Section 320 authorizes the Secretary of the Army to order hospitalization, medical and surgical treatment, and domiciliary care which the National Guardsman may incur as an obligation resulting from training under Section 503, Title 32, U.S. Code. Section 318 does not apply to plaintiff because guardsman Farrier was killed instantly, so that it was impossible for him or his widow to receive any of the benefits under Section 318. Section 319 provides benefits to a guardsman on training duty, such as Farrier, only when he is injured. The benefit categories contemplate an injured guardsman who survives and needs hospitalization and medical care, and therefore Section 319 is inapplicable. Likewise, Section 320 provides for hospitalization, medical and surgical treatment. It contemplates an injured, surviving guardsman, and is therefore inapplicable. Furthermore, the record contains no evidence that Farrier survived the accident for any period of time so as to be entitled to any of the benefits provided by Sections 318, 319 and 320, Title 32, U.S. Code. The interpretation given to these three federal statutes defies the liberal construction of the Ohio Workers' Compensation Act mandated by R.C. 4123.95.

Moreover, in defining "state active duty," the clause in R.C. 4123.021 which states "for which duty status injury and occupational disease benefits are not otherwise provided by act of the congress * * *" makes no reference to the "death benefits" at issue in this case. Section 35, Article II of the Ohio Constitution provides that "laws may be passed establishing a state fund" "[f]or the purpose of providing compensation to workmen and their dependents, for *death,* injuries or occupational disease, occasioned in the course of such workmen's employment * * *." (Emphasis added.) Section 35, Article II refers in six separate instances to the trilogy of injury, disease or *death.* R.C. 4123.021, defining "state active duty" does not refer to the trilogy, but refers only to "injury and occupational disease." It does not exclude death benefits to dependents of the National Guardsman dying while on "state active duty." Workers' compensation death benefits as provided in R.C. 4123.59 are separate and independent from injury and occupational disease benefits. The right of surviving dependents of a deceased employee to compensation on account of his death under R.C. 4123.59 is separate and distinct from the right to compensation related to such employment by reason of the injury. *Indus. Comm.* v. *Davis* (1933), 126 Ohio St. 593; *State, ex rel. Jones & Laughlin Steel Corp.,* v. *Dickerson* (1953), 160 Ohio St. 223 [53 O.O. 86].

## II

I object to today's decision for the additional reason that R.C. 4123.021, as applied by the majority, is violative of equal protection.

The majority reasons that the distinction set forth in R.C. 4123.021 comports with equal protection in that it is rationally related to a legitimate state objective: to prevent double recovery by a guard member or his dependents from the state and federal governments. The court next perverts this pur-

pose by barring *any* recovery from the State Insurance Fund where federal benefits, in any amount, have been awarded. No legitimate state objective is served by this distortion of the laudable aim of compensating workers injured or killed in the course of their duties. Further, the majority fails to even address the possibility of a setoff in workers' compensation benefits equal to the amount of federal benefits received. This excessively harsh interpretation, at the very least, contravenes the liberal construction mandate of R.C. 4123.95. In my view, it is also unconstitutional.

This court has held that workers' compensation legislation may be upheld against an equal protection challenge if it is demonstrated that the statute under attack is rationally related to some state objective at least as important as the purpose contained in the Constitution of Ohio, which is to compensate workers who are injured or killed due to work-related causes. *Kinney v. Kaiser Aluminum & Chemical Corp.* (1975), 41 Ohio St. 2d 120, 124 [70 O.O.2d 206]. It is therefore necessary to examine the purpose underlying the denial of state benefits to Ohio National Guard members, or their dependents, who receive some benefits or gratuities from federal sources. If the purpose of this statute is to prevent *double* recovery, then the statute is constitutional where the device of setoff is permitted to "fill the gap" when federal benefits amount to less than the sum payable under the Ohio Workers' Compensation Act. In this scenario, the Constitution's announced goal of compensating injured workers or their survivors would be fulfilled.

But where a classification operates to preclude, wholesale, any participation in the State Insurance Fund by a particular group, without setoff, simply because they have received some federal benefits, the goal of compensating workers or their dependents is completely foiled. The only reasonably ascertainable basis for this exclusion is the conservation of state funds. But this court has ruled that preservation of state funds is not a legitimate state objective when its result is denial of compensation to a group of claimants otherwise entitled. *State, ex rel. Nyitray,* v. *Indus. Comm.* (1983), 2 Ohio St. 3d 173, 177. I can discern no other basis which would justify a classification such as this one. Certainly, no one imagines that the claims of Ohio National Guardsmen or their survivors are inherently less meritorious than any other class of claims.

The majority declares that the language of R.C. 4123.021 so clearly and unambiguously reflects the intent of the legislature that the interpretation advanced in today's decision is virtually inescapable. For the following reasons, I disagree.

R.C. 4123.021 does not expressly require setoff. It should be noted, however, that the legislature has permitted it in a directly analogous situation. In R.C. 4123.541, a proportionate reduction of state benefits payable to civil defense workers and their survivors is required where federal programs provide compensation. Thus, the receipt of federal benefits does not disqualify civil defense workers from eligibility for state funds. I cannot conceive of any constitutionally acceptable rationale for denying similar treatment to national guardsmen.

Further, it should be emphasized that R.C. 4123.021 does not expressly prohibit setoff. To do so would violate equal protection under *Kinney, supra,* in that such a provision could not be justified by any state objective equal in importance to the compensation of claimants. To interpret the statute as proscribing setoff, therefore, violates the familiar rule of statutory construction embodied in R.C. 1.47(A). It is therein required that courts presume that the legislature enacted the statute in question intending to comply with the Constitutions of Ohio and of the United States. The majority's reading of R.C. 4123.021 as barring this class of claimants entirely, without any provision for setoff, renders the statute constitutionally infirm when a different, constitutionally satisfactory interpretation is available. This construction must fail under R.C. 1.47(A).

Additionally, today's decision is inconsistent with R.C. 1.47(C), which requires a presumption that the General Assembly intended a just and reasonable result. The result of the majority's interpretation is neither just nor reasonable. It slams the door on a class of claimants for reasons which are insupportable in the extreme. The interpretation proposed by the appellant, whereby setoff would be permitted, does not do violence to the language of R.C. 4123.021, and avoids an unconstitutional classification as well as an unjust result. It would also comport with the public policy against double benefits for a single claim. Lastly, it complies with the liberal construction mandate of R.C. 4123.95, which the majority so easily dismisses.

For the reasons outlined above, I am firmly convinced that the interpretation of R.C. 4123.021 presented by this court collapses under equal protection scrutiny. I would therefore reverse the court of appeals on that basis.

J. P. CELEBREZZE, J., concurs in the foregoing dissenting opinion.