498 So.2d 161 (1986)
James LUCAS
v.
The MILITARY DEPARTMENT, State of Louisiana.
No. CA 85 0923.
Court of Appeal of Louisiana, First Circuit.
November 12, 1986.
Writ Denied January 23, 1987.
Michael W. Shannon, Alexandria, for plaintiff-appellee James Lucas.
James C. Downs, Alexandria, for defendant-appellant The Military Dept., State of La.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
LANIER, Judge.
This is a suit for benefits under the Louisiana Worker's Compensation law by a member of the Louisiana National Guard against the Military Department of the State of Louisiana (State). The State answered and defended on the ground that the guardsman was not entitled to Louisiana worker's compensation benefits as a matter of law, and, in the alternative, if compensation benefits were due, the State was entitled to a credit for all social security disability benefits paid to the guardsman. The trial court ruled (1) the guardsman was entitled to Louisiana worker's compensation benefits from the State, (2) the guardsman was totally and permanently disabled and entitled to maximum benefits, (3) the State was not entitled to any offset or credit for social security benefits paid to the guardsman, (4) the State was entitled to a credit for wages paid in lieu of compensation, (5) the guardsman was not entitled to statutory penalties, and (6) the State was liable for all costs legally assessable against it. The State took this supensive appeal.

*162 FACTS
The operative facts of the case are simple and undisputed. The guardsman was injured on or about July 22, 1981, while attempting to lift a portable toilet into a military truck during a two week annual training exercise at Camp Beauregard, Rapides Parish, Louisiana, while a member of the Louisiana National Guard. The guardsman was ordered to the annual training session, pursuant to 32 U.S.C. 502. As a result of this injury during annual training, the guardsman has received federal benefits, including incapacitation pay during his period of disability until discharge from the Louisiana National Guard and United States Veterans Administration disability benefits.

IS A MEMBER OF THE LOUISIANA NATIONAL GUARD WHO IS INJURED IN THE LINE OF DUTY DURING FEDERALLY ORDERED ANNUAL TRAINING ENTITLED TO LOUISIANA WORKER'S COMPENSATION BENEFITS?
The State's only assignment of error is that "[t]he Trial Court erred when it granted plaintiff Louisiana State workmen's compensation benefits pursuant to R.S. 23:1211 for an injury received while plaintiff was engaged in federally mandated annual training drill pursuant to 32 U.S.C. 502 and while plaintiff was thus in the active service of the United States of America."
The Louisiana National Guard is a branch of the militia of the State. The unit to which Lucas belonged was a part of the active National Guard as defined in La.R.S. 29:4. However, enlistments in the National Guard and qualifications for applicants are controlled by federal law, not State statutes. Title 32 of the United States Code contains the relevant federal laws.
Under Louisiana law, an employee is entitled to worker's compensation benefits if he "receives personal injury by accident arising out of and in the course of his employment[.]" La.R.S. 23:1031. Thus, we must first determine herein whether Lucas was an employee of the State or an employee of the United States, or both, at the time of his accident.
The National Guard has a State mission[1] and a United States mission. The United States mission of the National Guard is to be ready in the event of a call by the President of the United States, or to assist the regular forces of the United States to execute the laws of the United States. 10 U.S.C. 3079 and 3500. A two week annual training exercise is mandated by 32 U.S.C. 502(a), which training is exclusively for the United States mission. Lucas was participating in the two week annual training exercise for the United States mission when he was injured. The training facilities (Camp Beauregard) are federally owned, the guardsmen (such as Lucas) are paid for training by the United States, and all training equipment and related expenditures are funded by the United States. 32 U.S.C. 106, 107 and 502(f). As a result of his injuries, Lucas has received United States benefits. Other states have held that guardsmen injured during annual training for the United States are not employees of the state and are not entitled to state worker's compensation benefits. Farrier v. Conner, 12 Ohio St.3d 219, 466 N.E.2d 557 (1984); Commonwealth, Pennsylvania National Guard v. Workmen's Compensation Appeal Board, 63 Pa. Cmwlth. 1, 437 A.2d 494 (Pa.1981); Kentucky *163 National Guard v. Bayles, 535 S.W.2d 234 (Ky.1976); Atkins v. State, Department of Highway Safety and Motor Vehicles, 383 So.2d 313 (Fla.App. 1st Dist. 1980). We agree with these holdings.
Lucas contends he is entitled to Louisiana worker's compensation benefits, in addition to United States benefits, because of La.R.S. 23:1211, which, in 1981, provided as follows:

Special compensation benefits for injury or death of member of national guard
A. Every member of the national guard who is accidentally injured, or his dependents if he is accidentally killed, while on active duty during a state of emergency declared by the governor and for the duration of such emergency as declared by the governor, shall be compensated by the state in accordance with the worker's compensation law, including but not limited to such medical, surgical and hospital services and medicines and such disability and death benefits as are authorized by said worker's compensation law.
B. No compensation shall be paid by the state for injury or death occurring while in the service of the United States of America or while going to or returning from this service.
C. No compensation shall be paid unless the injury or death arose out of and in the course of the service. Before any claim is certified for payment, proof that the applicant is entitled to payment shall be made in accordance with regulations prescribed by the adjutant general. The amount payable as compensation may be commuted to a lump sum settlement by agreement of the parties. In computing the weekly benefit hereunder, either the weekly wages from the member's principal civilian employment or his weekly military wages, whichever is larger, will be used. Otherwise, the provisions of the worker's compensation law apply.
D. Except as provided in Subsection C hereof, the provisions of this section and of no other law shall govern the compensation benefits payable to members of the national guard.
Lucas cites Logan v. Rochester, 463 So.2d 56 (La.App. 3rd Cir.1985), Harrell v. Military Department, 457 So.2d 314 (La.App. 3rd Cir.1984) and Chapman v. Belden Corporation, 414 So.2d 1283 (La.App. 3rd Cir. 1982), reversed on other grounds, 428 So.2d 396 (La.1983) as authority for this statutory interpretation.[2]
Prior to La.R.S. 23:1211 (Act 51 of the 1968 Extraordinary Session), Louisiana worker's compensation was authorized for guardsmen pursuant to La.R.S. 29:39 (1950), which provided as follows:
Every member of the national guard who is accidentally injured, or his dependents if he is accidentally killed, while on duty in the service of the state or while attending any drill or formation to which he is ordered by competent authority or while going to or returning from this duty, drill, or other formation, shall be compensated by the *164 state in accordance with the workmen's compensation law.
No compensation shall be paid by the state for injury or death occurring while in the service of the United States of America or while going to or returning from this service, except while going to, attending, or returning from armory drill.

No compensation shall be paid unless the injury or death arose out of and in the course of the service. Before any claim is certified for payment, proof that the applicant is entitled to payment shall be made in accordance with regulations prescribed by the adjutant general. For the purpose of this Sub-part, the minimum payment of compensation is six dollars per week. Otherwise, the provisions of the workmen's compensation law apply.
[Emphasis added.]
Under this statute, it was held that the widow and dependents of a guardsman, who was killed in a jeep accident while enroute to an armory on a day when he was assigned to duty for a make-up drill, were entitled to Louisiana worker's compensation benefits. Constant v. State, 272 So.2d 675 (La.1973). In Chapman, 414 So.2d at 1288, our brothers on the third circuit discussed the legislative purpose of La.R.S. 23:1211 as follows:
As we construe it, the act was intended to allocate the liability for workmen's compensation benefits between the state and federal governments, depending upon in whose service the member was acting at the time of the injury, and to expand state coverage to those situations where a state of emergency has been declared by the governor. In reaching this result we rely particularly on the last section of sub-section (c) which provides that `Otherwise, the provisions of the workmen's compensation law apply.'
This interpretation was cited with approval in Harrell and Logan. We believe this interpretation to be correct.
In Kentucky National Guard v. Bayles, 535 S.W.2d at 237-238, appears the following:
The army national guard being a state force is subject to such use as the state may require according to its laws. Guardsmen in active service of the state are entitled to such benefits as may be provided them by state law but are not entitled to any federal benefits unless congress so provides.
The Constitution of the United States, Article I, Section 8, Clause 16, provides that training of the army national guard is not a federal function. Furthermore federal law provides that members of the army national guard when not on active duty pursuant to a presidential call of the militia or activation of the reserve will be administered, armed, uniformed, equipped and trained in their status as members of the army national guard and not in their federal status as members of the Army National Guard of the United States insofar as the federal government is concerned. 10 U.S.C. §§ 3079 and 3495. Therefore, all training of the army national guard is conducted under the auspices of the state. The federal government however prescribes the standards and plays an important role in training by providing federal assistance to the states and substantial benefits to the members. The purpose of these benefits is to induce the states and guard personnel to reach and maintain the state of readiness necessary to perform federal service in case of necessity.
Under regulations prescribed by the secretary each unit of the army national guard is required to assemble for training no less than forty-eight times a year and to participate in encampments, maneuvers or other exercises at least fifteen days a year unless excused therefrom by the secretary. 32 U.S.C. § 502(a). The secretary is also authorized to provide for the participation of the army national guard in maneuvers, encampments, or other exercises either independently or in conjunction with the army. 32 U.S.C. § 503.

*165 For the performance of training required or authorized by federal law, federally recognized members of the army national guard are entitled to pay to the extent of availability of federal funds. In the case of full time duty performed under law, 32 U.S.C. § 502(f), full active duty pay and allowances are authorized. 37 U.S.C. § 204.
Members of the army national guard who suffer disability while engaged in any training required or authorized by federal law are entitled to hospitalization and medical treatment and the payment of burial expenses if death results. 10 U.S.C. §§ 3687, 1475, 3721 and 32 U.S.C. §§ 318, 319, 321. Pay and allowances may be authorized during all or part of the period of hospitalization. 37 U.S.C. § 204. If the disability resulted from an injury, disability retirement pay or severance pay may be authorized. 32 U.S.C. §§ 318, 320 and 10 U.S.C. §§ 1204, 1205, 1206. In addition there may be eligibility for compensation benefits through the Veterans Administration. 38 U.S.C. §§ 331, 3104.
This cruise from tedium to apathy makes it painfully apparent that Bayles was training in a state status as a member of the army national guard and not in a federal status as a member of the Army National Guard of the United States, but that nonetheless he was cloaked in a cocoon of federal compensation benefits. This is not to say, however, that such training and status necessarily bring him within the statutory definition of `active state service'.
It may be that KRS 38.010(4), defining `active state service', could have been more artfully drawn to accomplish its purpose but it is adequate to do the job. Even a cursory reading of the statute makes it as clear as `Swedish crystal' that the training duty engaged in by Bayles does not fit the provisions of subsection (a) which deal with activities totally unrelated to training. It is equally apparent that subsection (b) is inapposite because the gubernatorial orders contemplated there are those which would be directed to an individual rather than a unit, as here, and the duties there described are inconsistent with unit training. See KRS 38.030(1). The Bayles claim to coverage must sink or float based upon the provisions of subsection (c). Sink it does since Bayles was not on `active state service' in the statutory sense at the time of the injury because he was `entitled to receive federal pay'.
The threads of federal statutory law from which the cocoon of protection was spun were in effect at the time the legislature of the commonwealth extended workmen's compensation coverage to members of the Kentucky National Guard. It must be presumed that at that time the general assembly was cognizant of the federal law and this exposes their logic and equity in restricting the applicability of the Workmen's Compensation Act to those situations in which the guardsman was injured while not entitled to federal pay. The obvious intention of the legislature was to prevent `double dipping'.
Pursuant to paragraph (B) of La.R.S. 23:1211, a guardsman is not entitled to Louisiana worker's compensation benefits while in the service of the United States. Paragraph (C) of La.R.S. 23:1211 provides that a guardsman is not entitled to Louisiana worker's compensation benefits unless the injury arose out of and in the course of the service. Paragraph (C) does not define what service (State or United States) it is referring to. However, paragraph (C), when read in pari materia with paragraph (B), must refer to State service because paragraph (B) expressly refers to and excludes Louisiana benefits for United States service. A guardsman can only be acting in either State or United States service, or both, and to interpret service in paragraph (C) to apply to other than State service (United States service, or both) would cause an irreconcilable (and ridiculous) conflict between paragraphs (B) and (C). In Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984), appears the following:

*166 When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker.
La.R.S. 23:1211 does not define what constitutes United States service or State service for its purposes. When the meaning of a law is unclear, the most effectual way of discovering its true meaning is to consider the reason which induced the legislature to enact it. La.C.C. art. 18; Bunch, 446 So.2d at 1360. As previously indicated, the purpose of La.R.S. 23:1211 is to allocate the liability for worker's compensation benefits between the State and the United States, depending upon in whose service the guardsman was acting at the time of the injury. As indicated by the Kentucky Supreme Court in Kentucky National Guard v. Bayles, a similar law in that State was not designed to permit "double dipping". For these reasons, we construe paragraphs (B) and (C) of La.R.S. 23:1211 in pari materia to mean that State benefits are not payable when United States benefits are payable, and State benefits are payable when United States benefits are not. Accordingly, since Lucas is entitled to and has in fact collected United States benefits, State benefits are not due to him. The trial court ruling to the contrary is in error.
Lucas cites numerous cases that hold that guardsmen are State employees except when in the actual service of the United States. See, for example, Williams v. United States, 189 F.2d 607 (10th Cir.1951). The focus of these cases was whether the United States was liable for the acts of the guardsmen for purposes of the Federal Tort Claims Act. 28 U.S.C. 1346 and 2671. We do not perceive this inconsistency in United States law as relevant to an interpretation of La.R.S. 23:1211. Congress eliminated this inconsistency with Public Law 97-124, effective December 29, 1981, which amended the definition of United States employee in 28 U.S.C. 2671 to include guardsmen engaged in training or duty under 32 U.S.C. 316 (military arms instruction of civilians), 502 (annually required drills and field exercises), 503 (participation in field exercises independently of or in conjunction with the Army and/or the Air Force), 504 (attending National Guard schools and small arms competitions), or 505 (attending Army and/or Air Force schools and field exercises). To again coordinate payment of benefits with this change in United States law, the Louisiana legislature by Act 973 of 1985, effective July 23, 1985, amended paragraph (C) of La.R.S. 23:1211 to provide that "[n]o compensation shall be paid unless the injury or death arose out of and in the course of service while on active duty during a state of emergency declared by the governor and only for the duration thereof and for no other kind of service whatsoever." This action by the State legislature shows a continuing intent to coordinate benefits between the State and the United States.

*167 DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is entered herein dismissing Lucas' petition with prejudice at his costs.
REVERSED AND RENDERED.
NOTES
[1] The State mission of the National Guard is set forth in La.R.S. 29:7(A) and (B) as follows:

A. The governor may order into the active service of the state any part of the militia that is necessary in the event of insurrection, invasion, or riot, or imminent danger thereof, or in the event of public disaster or danger from flood, fire, storm, or earthquake, or in the event of a civil disturbance, or as to assist the civil authorities in guarding prisoners.
B. When the active national guard, or a part thereof, is called to duty under the constitution and laws of the United States of America, the governor shall order into service the remaining units of the active national guard, if any, or any part thereof that is necessary.
When called to service by the governor, the salaries and expenses of the National Guard are paid by the State.
[2] We believe the holdings in Chapman, Harrell and Logan to be distinguishable from the instant case because of the manner in which the issue in each was presented to the court. In Chapman, the court of appeal held the guardsman at a Saturday armory drill was an employee of the State and the United States was not an indispensable party; payment of United States benefits was not discussed. In Harrell, which was considered on a writ from the overruling of various exceptions, the court of appeal declined to consider allegations in the State's brief that the plaintiff had received United States benefits because such were not pled nor was any evidence introduced in the trial court. In Logan, which involved a jeep accident during annual training, the plaintiff brought suit in tort and worker's compensation against the driver of the jeep, the State and the manufacturer of the jeep. The driver and the State filed a motion for partial summary judgment contending Logan had no cause of action for tort against them because his sole remedy was worker's compensation. The trial court granted the partial summary judgment, and the court of appeal affirmed. No argument was advanced that Logan was an employee of the United States while on annual training and/or entitled to United States benefits.