Judgment rendered December 3, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,589-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

TYLER BOWMAN                                        Plaintiff-Appellant

versus

DEVIN M. WILLIAMS, ET AL                          Defendants-Appellees

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 79,762

Honorable Michael Nerren, Judge

* * * * *

TOMMY JAN JOHNSON                                 Counsel for
                                                  Plaintiff-Appellant

LUNN IRION LAW FIRM, LLC
By: James Alex Mijalis

TIMOTHY R. WYNN                                   Counsel for
Assistant Attorney General                        Defendant-Appellee,
                                                  Devin M. Williams

LOUISIANA DEPARTMENT
OF JUSTICE
By: Blake Edward Ryland

RICHIE, RICHIE & OBERLE, LLP            Counsel for
By: Byron Andrew Richie                 Defendant-Appellee,
    Paul Douglas Oberle, Jr.            American National
                                        Property and
                                        Casualty Company


TIMOTHY R. WINN                         Counsel for
CHRISTOPHER G. MCNEIL                   Defendant-Appellee,
Assistant Attorneys General             Christian M. Hood


DAVENPORT, FILES &
KELLY, L.L.P.
By: Grant M. Tolbird


CHARLES BRYAN RACER                     Counsel for
TIMOTHY R. WYNN                         Defendant-Appellee,
Assistant Attorneys General             Samuel Paul Mosley,
                                        Cptn.

\* \* \* \* \*

Before COX, HUNTER, and ELLENDER, JJ.

ELLENDER, J., concurs in result only, with written reasons.

COX, J., concurs for the reasons assigned by J. ELLENDER.

**HUNTER, J.**

Plaintiff, Tyler Bowman, appeals a district court ruling granting a motion for summary judgment in favor of defendants Christian Hood, Devin M. Williams, Samuel Paul Mosley, and American National Property and Casualty Company pursuant to immunity in La. R.S. 29:735. For the following reasons, we reverse and remand this matter for further proceedings.

## FACTS

In 2021, Tyler Bowman ("Plaintiff") traveled eastbound on U.S. Highway 80 in Webster Parish, Louisiana, for a planned fishing trip. Before the accident, an Arkansas National Guard Unit was deployed to Louisiana in response to Hurricane Ida at the request of the State of Louisiana to assist and support emergency response efforts. For two weeks, Captain Mosley ("Mosley"), Christian Hood ("Hood"), Devin Williams ("Williams") (collectively "Defendants"), and other members of the unit cleaned trees from public roads for at least eight hours a day. When ordered to head back to Arkansas, Defendants were commanded to return in a military convoy and refuel at Camp Minden, where the entrance would be open. The convoy consisted of several camouflaged Humvees and trailers.

According to testimony, Mosley stated that the convoy contained 10 vehicles, while Hood estimated the convoy had 50 to 80 vehicles. Mosley was informed that the convoy only had a particular window to refuel; however, Mosley decided to stop the convoy in Shreveport to allow his troops to rest, which his superior officer approved. The convoy departed Shreveport the morning of September 11, 2021, and upon arrival at Camp Minden between 5:00 a.m. and 5:15 a.m., the entrance was closed.

According to the Defendants, the convoy was forced to stop, and the vehicles were "pretty tightly packed," "almost bumper to bumper," with "nowhere to go." This led to the convoy remaining motionless for several minutes, temporarily blocking the highway.

At the intersection, Highway 80 is four lanes separated by a median. Stop signs are on both sides of Goodwill Road, and any traffic in the median of Highway 80 is controlled by a yield sign. Hood and Williams were two of the convoy members operating vehicles blocking the eastbound travel lanes of Highway 80. Hood's Humvee stopped in the left eastbound lane, while Williams' Humvee crossed all of Highway 80, but a small portion of their trailer remained in the eastbound lane.

Defendants asserted that all the headlights, brake lights, and reflectors of the Humvees and trailers were on during the stop. However, Plaintiff maintained he only saw a "silhouette" (the trailer Williams was pulling). Plaintiff could not react in time to avoid impact and subsequently collided with the Humvee and trailer.

Plaintiff filed suit in district court alleging that Defendants Mosely, Williams, and Hood engaged in gross negligence or willful misconduct resulting in damage sustained by plaintiff in the wreck. After engaging in discovery, Defendants filed a motion for summary judgment based on immunity pursuant to La. R.S. 29:735. Additionally, Defendants contended that even if they return to Arkansas, immunity still applies under La. R.S. 29:735(A)(1). Plaintiff opposed the motions and asserted gross negligence under La. R.S. 29:735(A)(1). Plaintiff further argued that one Defendant could be held grossly negligent due to another Defendant's conduct by "cumulating" their conduct.

The district court granted Defendants' motion for summary judgment. The court defined willful misconduct as an intent to cause an action that occurred, and based on that standard, it found that Defendants' misconduct did not rise to such a level. Ultimately, the district court weighed the totality of the evidence and concluded that the conduct of the Defendants, individually and in concert, did not rise to the level of willful misconduct.

Plaintiff appeals.

## DISCUSSION

*National Guard*

The National Guard is a "hybrid" organization. *United States v. Hutchings,* 127 F. 3d 1255 (10th Cir. 1997). It includes "two overlapping but distinct organizations" – the National Guard of the individual States and the National Guard of the United States of America. *Perpich v. Department of Defense,* 496 U.S. 334, 345, 110 S. Ct. 2418, 110 L. Ed. 2d 312 (1990). Explaining the National Guard's dual enlistment requirement, the Supreme Court in *Perpich* noted that "[s]ince 1933 all persons who have enlisted in a State National Guard unit have simultaneously enlisted in the National Guard of the United States." *Id.*

The National Guard has a State mission and a United States mission. The United States mission of the National Guard is to be ready in the event of a call by the President of the United States, or to assist the regular forces of the United States to execute the laws of the United States. 10 U.S.C. §§ 3079 and 3500.  The State mission of the National Guard is set forth in La. R.S. 29:7(A) and (B) as follows:

> A. The governor may order into the active service of the state any part of the militia that is necessary *** in the event of public disaster or danger from flood, fire, storm, or earthquake[.] ***

> B. When the active national guard, or a part thereof, is called to duty under the constitution and laws of the United States of America, the governor shall order into service the remaining units of the active national guard, if any, or any part thereof that is necessary.

When called to service by the governor, the salaries and expenses of the National Guard are paid by the State. *Lucas v. Mil. Dep't*, 498 So. 2d 161 (La. App. 1 Cir. 1986), *writ denied*, 500 So. 2d 421 (La. 1987).

*Posse Comitatus Act*

The Posse Comitatus Act ("PCA"), codified in 18 U.S.C., § 1385, provides: Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned not more than two years, or both. While we acknowledge that violations of the PCA have been deemed "widespread and repeated," *see*, *United States v. Salinas*, 823 F. App'x 259, 260 (5th Cir. 2020), there is no indication that such a violation occurred in this case, as the record does not suggest the PCA was violated by sending the military to enforce civilian laws.[1]

Thus, the PCA effectively "eliminate[s] the direct active use of Federal troops by civil law authorities" and "prohibits Army and Air Force military personnel from participating in civilian law enforcement activities." However, in the instant case, there is no indication the National Guard unit was deployed to participate in "law enforcement activities." Nonetheless, the

---

[1] The extent of the powers and duties of the National Guard has recently become a hotbed issue in our federal courts due to the current administration's use of the national guard in certain cities. Numerous concerns have been raised regarding the use of force and the level of brutality inflicted by members of the guard and other federal law enforcement agencies on private citizens, including members of the press.

use of military power in civilian affairs will always be a temptation for government officials. The early history of the United States illustrates this temptation, as several presidential administrations utilized the military for law enforcement purposes. And when the public supports the use of military power or excessively trusts the military, this temptation only increases.

Congress witnessed "gross abuses" of military involvement in civilian law enforcement during the Reconstruction Era and determined that the constitutional provisions ensuring the freedom of civilians to be free from military control did not provide enough protection against such abuses. This led Congress to enact the PCA as a subconstitutional check to protect the right to be free from military control, providing a second layer of protection. Anthony J. Ghiotto, *Defending Against the Military: The Posse Comitatus Act's Exclusionary Rule*, 11 Harv. Nat'l Sec. J., 359 (2020) (internal footnotes omitted).

Furthermore, federal law provides that members of the army national guard, when not on active duty pursuant to a presidential call of the militia or activation of the reserve, will be administered, armed, uniformed, equipped and trained in their status as members of the army national guard and not in their federal status as members of the Army National Guard of the United States insofar as the federal government is concerned. 10 U.S.C. §§ 3079 and 3495. Therefore, all training of the national guard is conducted under the auspices of the state. The federal government, however, prescribes the standards and plays an important role in training by providing federal assistance to the states and substantial benefits to the members. The purpose of these benefits is to induce the states and guard personnel to reach and

maintain the state of readiness necessary to perform federal service in case of necessity. *Lucas v. Mil. Dep't, supra.*[2]

In the instant case, according to the evidence of record, Defendants were deployed to Louisiana to assist with "emergency recovery activities" and the declared state of emergency associated with Hurricane Ida. Therefore, this case does not present an issue of whether the governor or the national guard overstepped. We must address the central issue: whether the district court erred in granting Defendants' motion for summary judgment based on immunity.

*Motion for Summary Judgement/La. R.S. 29:735*

Plaintiff contends the district court erred in granting Defendants' motion for summary judgment based on immunity pursuant to La. R.S. 29:735. Plaintiff argues the Defendants were inadequately trained and violated several provisions of the Army National Guard's Convoy Commanders' Guide, including spacing, communication, and nighttime movement, displaying willful conduct. In addition, evidence indicated that

---

[2] Although there is a growing sentiment to normalize military policing, the founders of this country made it abundantly clear turning troops on civilians is an intolerable threat to our liberties. It further underscores the founders of this country feared and rejected the military's use as a tool of oppression.

While the efforts may be sincere with a focus on the protection of the people, we cannot ignore the potential harm history has shown would occur when such actions are haphazardly executed. For context, we look to the 1972 deployment of the National Guard by then-Governor Edwin Edwards which led to the untimely death of two university students.

Any attempt to turn the National Guard into a standing army on American soil by deploying troops against the American people is one of the abuses of power the Constitution was written to restrain. Each time an administration uses troops to intimidate and control civilians, it moves the nation closer to normalizing a police state. Deploying troops in American cities would without question terrorize our communities and create an environment hostile to the rights and liberties our Constitution guarantees. Finally, since there remains the question of liability/immunity for the actions of those deployed, whether from another state or within the state, protecting the people of Louisiana against threats foreign and domestic should be the paramount focus and not simply an afterthought.

one of the Defendants planned the route using Google Maps, failed to obtain escorts at critical points, and did not communicate when vehicles blocked Highway 80.

The motion for a summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant.[3] A material fact is one that potentially insures or prevents recovery, affects a litigant's ultimate success, or determines the outcome of a lawsuit. *Rhodes v. AMKO Fence & Steel Co., LLC*, 21-19 (La. App. 5 Cir. 10/28/21), 329 So. 3d 1112, 1117. A genuine issue of material fact is one in which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. *Zelia, LLC v. Robinson*, 19-372 (La. App. 5 Cir. 12/30/19), 286 So. 3d 1268, *writ denied*, 20-0253 (La. 4/27/20), 295 So. 3d 948. Appellate courts review motions for summary judgment de novo, as immunity statutes are strictly construed against the mover claiming immunity. *Monteville v. Terrebonne Par. Consol. Gov't*, 567 So. 2d 1097 (La. 1990); *Banks v. Par. of Jefferson*, 08-27 (La. App. 5 Cir. 6/19/08), 990 So. 2d 26, *writ denied*, 08-1625 (La. 10/24/08), 992 So. 2d 1043.

La. R.S. 29:726(A) provides:

> A. The Governor's Office of Homeland Security and Emergency Preparedness, under the Military Department, shall be responsible for homeland security and emergency preparedness in the state. In order to perform the duties and functions required under this Chapter, the office may establish and maintain office of homeland security and emergency preparedness operations centers[.]

La. R.S. 29:735(A)(1) provides:

---

[3] La. C.C.P. art. 966 (A)(1).

Neither the state nor any political subdivision thereof, nor other state agencies, nor, except in case of willful misconduct, the employees or representatives of any of them engaged in any homeland security and emergency preparedness and recovery activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity.

Under La. R.S. 29:735, the State, its political subdivision, employees, or representatives, are immune from liability for injury or death arising out of homeland security or emergency activities in which they are engaged, unless the injury or death is due to willful misconduct. *Noyel v. City of St. Gabriel*, 15-1890 (La. App. 1 Cir. 9/1/16), 202 So. 3d 1139, *writ denied*, 16-1745 (La. 11/29/16), 213 So. 3d 392.  Thus, pursuant to La. R.S. 29:735, only the most egregious conduct by agents, employees, or representatives of public agencies that exhibits an active desire to cause harm, or a callous indifference to the risk of potential harm from flagrantly bad conduct, will rise to the level of "willful misconduct" or "criminal, willful, outrageous, reckless, or flagrant misconduct" resulting in a forfeiture of all the immunity protections afforded by the Louisiana Homeland Security and Emergency Assistance and Disaster Act. *Rabeaux v. Theriot*, 15-724 (La. App. 3 Cir. 12/9/15), 2015 WL 8469758.

In *D'angelo v. Par. of Jefferson*, 25 -192 (La. App. 5 Cir 6/4/25), 414 So. 3d 1227, *writ denied*, 25-01096 (La. 11/12/25), ___ So. 3d ___, Plaintiff sued the Louisiana Department of Transportation and Development ("DOTD") for property damage, alleging that debris from a temporary bridge built after Hurricane Ida was never removed. DOTD sought summary judgment, claiming immunity under La. R.S. 29:735 and denying any willful

8

or malicious conduct. The trial court denied the motion, finding genuine issues of material fact as to whether DOTD was engaged in emergency preparedness and recovery activities years after the hurricane. On appeal, the court held that DOTD failed to prove it was entitled to immunity and affirmed the trial court's denial of its motion for summary judgment.

In *St. Pierre v. La. S.W. Transp., Inc.*, 08-532 (La. App. 5 Cir. 5/12/09), 14 So. 3d 593, the decedent was killed in a collision between his vehicle and a tanker trailer driven by Steven Guidry. The decedent's estate filed a wrongful death and survival action against Guidry, his employer, Louisiana S.W. Transportation, Inc. (L.S.W.T.), and A3M Vacuum Services (A3M), alleging negligence in operating and managing wastewater transport on a heavily trafficked highway. L.S.W.T. and A3M sought summary judgment, claiming immunity under La. R.S. 29:735 for work related to post-Hurricane Katrina emergency operations. The court held that genuine issues of material fact remained and remanded the case to allow the estate to challenge the constitutionality of the cited immunity statutes.

In the instant case, Plaintiff has presented numerous and sufficient traffic and military convoy violations to raise genuine issues of material fact as to whether Defendants were engaged in emergency preparedness and recovery activities when attempting to enter Camp Minden. However, the immunity statute has a broad interpretation and can take effect before or after a declared state of emergency; the willful misconduct exception under La. R.S. 29:735 will not apply if a Defendant is engaged in an "emergency preparedness activity" and will be afforded immunity from tort liability if the Defendant was (1) an agent of the State, (2) had engaged in an

9

emergency preparedness activity, and (3) complied with the regulations of the Emergency Act.

Considering the foregoing, we find genuine issues of material fact exist as to whether Defendants were engaged in emergency preparedness and recovery activities at the time of the accident and are, therefore, entitled to immunity under the statute. Further, we find that genuine issues of material fact regarding whether defendants' actions of blocking a major highway with camouflaged vehicles, in the predawn hours, with the headlights of the vehicles facing away from oncoming traffic, constituted willful misconduct. Accordingly, we reverse the district court's judgment granting summary judgment, and we remand this matter for further proceedings.

## CONCLUSION

For the reasons set forth herein, we reverse the district court's judgment granting summary judgment in favor of Defendants. We remand this matter for further proceedings. Costs of these proceedings are assessed to Defendants, Christian Hood, Devin M. Williams, Samuel Paul Mosley, and American National Property and Casualty Company.

**REVERSED; REMANDED.**

**ELLENDER, J., concurring.**

I concur in the result to reverse and remand only, and for a limited reason, as I believe there remain genuine issues of material fact surrounding whether Appellees' actions of blocking the highway rose to the level of callous indifference to the risk of potential harm to others that would constitute willful misconduct. However, I do not believe genuine issues of material fact remain regarding whether Appellees engaged in emergency preparation and recovery activities that are within the scope of the Louisiana Homeland Security and Emergency Assistance and Disaster Act. Appellant has not challenged the applicability of the Act, and the law is well settled that returning to the location of the original deployment after doing the type of work this military unit was performing falls within the immunity protection of the Act.